THOMAS K. KNOWLAND v. JACOB SARTORIOUS et al.

1. BILL OF REVIEW — PARTIES — ALL THE PARTIES TO DECREE SOUGHT TO BE REVIEWED NECESSARY. — All the parties to a suit, the decree in which is sought to be reviewed, are necessary parties to the bill of review.

2. SAME — WHAT EXAMINABLE ON BILL OF REVIEW TO DISCOVER ERRORS IN DECREE. — On a bill of review, the pleadings and other proceedings, excepting the evidence at large, may be looked into to find errors, and the court is not confined literally to the face of the decree, as under the English practice.

3. SAME — SAME — CASE UNDER CONSIDERATION. — On a bill to review a decree confirming a tax title to land acquired by purchase at the tax collector's sale in Vicksburg, on the 5th May, 1863, it being averred, in the bill of review, that the vicinity of Vicksburg was, at the time of the tax sale, the theater of the operations of the hostile armies of the United States and Confederate States, and that the taxes due on the land were paid before the sale, and that publication of notice in the suit to confirm the tax title was not made for the time required by law: *Held*, that these grounds of error in the decree were conclusive in favor of the bill of review on demurrer.

APPEAL from the chancery court of Warren county. HILL, Chancellor.

The facts of this case are minutely stated in the opinion of the court.

*Owen McGarr*, for appellant,

Filed an elaborate argument, contending that the demurrer to the bill of review was improperly overruled; that a demurrer was the approved mode of defense to a bill of review, and that it did not admit the several grounds stated in the bill of review as errors in the decree; because they were not well pleaded; and, that the demurrer should have been sustained, if for no other cause, for the reason that Benjamin Sherry, a party to the original suit, was not made a party to the bill of review.

*T. A. & M. Marshall*, for appellees.

On the 18th day of July, 1870, Jacob Sartorious and others filed their bill in the chancery court of Warren county, to have a decree of that court rendered against them on the 7th day of February, 1870, confirming a tax title to certain lands described in the bill, opened and a rehearing granted them on the merits of the case.

Knowland demurred to the bill. His demurrer was overruled and he appealed.

By his demurrer he admits the following facts, all of which are distinctly stated in the bill, to wit: 1st. That the taxes for which the land was sold had actually been paid by the duly authorized agent of Sartorious, the then owner, before the sale. 2d. That the sheriff never called on Sartorious in person for the taxes, although he was residing in the county at the time. 3d. That there was on the land ample personal property of Sartorious to have paid the taxes many times over. 4th. That the taxes claimed to be due, and for which the land was sold, included a military relief tax levied in aid of the rebellion. 5th. That the sale was made on Tuesday the 5th day of May, 1863, and that the sale was not commenced on Monday and continued until Tuesday, because the sheriff could not complete the sale on Monday, or for any other reason. That there were, in fact, no sales

made on Monday, the day fixed by law, at all. 6th. That at the time of the sale, Vicksburg, where it was made, was under bombardment by the federal navy, and closely invested by the United States army ; that most of the inhabitants of the place had fled for safety ; and there were only four or five persons attending the sale ; and that it was wholly impracticable, in consequence of the occupancy of the country by the United States forces, then, and for more than four months prior thereto, for Jacob Sartorious to have gone into the town. 7th. That land was worth $5,000, was sold for the non-payment of $13 45, the amount of taxes claimed to be due. It seems to us these ought to be sufficient grounds to justify a court of equity in setting aside any tax sale. Indeed, it is not pretended that this tax title can be sustained according to law. But it is insisted that the defense ought to have been made to the bill filed by Knowland. That there is no error on the face of the record in that case, and that we state no new facts discovered since the rendition of his decree that might not have been ascertained by proper diligence before it was rendered ; and hence, no bill of review, or bill in the nature of a bill of review, or bill for a rehearing can now be entertained. The statute of this state (§ 6, art. 36, p. 546) is a full and sufficient answer to the views of appellant's counsel on this subject.

Jacob Sartorious was a non-resident. There was no service of process upon him. He did not appear and put in a plea, demurrer or answer, and, in fact, as he states in the bill, had no notice whatever of the suit by Knowland ; never heard of it until the decree had been rendered. If we admit the publication against him had been regular, and the proof of it sufficient, the decree against him was rendered on "proof of publication only," and the statute above referred to gives him a right to a rehearing, or to apply for a rehearing, at any time within five years. He was the owner of the land at the time of the sale for taxes, and he subsequently sold and conveyed it to Mrs. Sherry and her daughters by deeds, with covenants of general war-

ranty of title, and it is his duty to defend them in their possession and enjoyment of it. But the decree against Sartorious is certainly void on the face of the record. It was rendered without any legal notice to him of the suit. The proof of publication was not sufficient, either under the act of 1862 or 1860. The counsel attempted to make the publication and proof under the former, but, by the very words of the act, it is not applicable to proceedings under the act of 1860 to confirm tax titles. That act requires that notice shall be posted before the court-house door, and published in a newspaper for thirty days before the commencement of the term, to which the parties are required to appear and answer. It is admitted that the only proof in the record, at the time the decree was rendered, showed a publication against Sartorious, in the newspaper, of twenty-three days only, from the day of its first publication, to the first day of court, both inclusive. And it is also conceded, that the justice's certificate of even this publication is not sufficient, under the statute, to make it evidence. And it is attempted to cure these defects by introducing a new proof of publication on the hearing of the demurrers to our bill. They insist on holding us strictly to the face of the record, but are not willing to be judged by it themselves. Now, we submit that this is no such case as entitles them to any special favor or indulgence of the court, and they will not be allowed to mend or strengthen their hold by introducing any kind of evidence on demurrer.

We further submit, that the court ought to have taken judicial notice of the condition of the country at the time of the tax sale ; of the investment of Vicksburg, and also of the fact that a portion of the tax claimed was levied under a law passed for the relief of soldiers' families and in aid of the rebellion, and should have refused, for these reasons, to render the decree confirming the tax title.

And we also insist, that the chancery court had no jurisdiction of the case made by Knowland's bill. His title was

purely legal, if valid at all, and he had a clear and complete remedy at law. The act of 1860 is simply an attempt to confer on the chancery court the right to try legal titles, and is, we submit, unconstitutional and void.

In answer to the objection to our bill, that we did not make Benjamin Sherry a party to it, we will merely say, that he was dead at the time it was filed, and did not, when alive, have any interest in the land.

TARBELL, J.:

The record presents the following facts : On the 5th day of May, 1863, Thomas K. Knowland, appellant, became the purchaser of certain lands described in the record, at a sale by the tax collector of Warren county, and receiving from him a deed therefor. In May, 1869, Knowland instituted proceedings in chancery for a confirmation of his tax title, under the act of the legislature, approved February 10, 1860.

On the 6th day of December, 1869, a decree *pro confesso* was taken in said proceeding against all the defendants therein, and a decree final in February, 1870, to wit, against Jacob Sartorious, Benjamin Sherry, Sarah Sherry, Anastasia Mann and Belle Mann. In July, 1870, the complainants herein, to wit, Jacob Sartorious, Sarah Sherry, Belle Mann and Samantha Mann, filed their bill of complaint against said Knowland, praying that the decrees *pro confesso* and final taken against them may be opened and all the proceedings in said cause carefully reviewed ; that the decree of Knowland be dismissed; that his deed be canceled ; and for general relief.

A deed of the lands in controversy from Sartorious and wife to Benjamin Sherry, Sarah Sherry, Anastasia Mann and Belle Mann, dated February 19, 1866, and a transcript of the proceedings of Knowland against Jacob Sartorious, Benjamin Sherry, Sarah Sherry, Anastasia Mann and Belle Mann, with the conveyance of the tax collector to Knowland, May 5, 1863, are made exhibits. The defendant demurred

to the bill, first, because Benjamin Sherry, one of the defendants in the original bill, and against whom the decree was rendered, is not made a party; second, because the complainants do not allege that the new matter set up, to wit, the allegation that the taxes were in fact paid, could not have been known to complainants by reasonable diligence before the rendition of said final decree.

With the demurrer, the defendant submitted a petition asking that an affidavit of publication of notice to non-residents in the case of Knowland v. Sartorious et al., which affidavit was made August 27, 1870, be filed in said original cause as of the date of August 4, 1869. It is stated in the petition that the affidavit filed in the cause shows publication beginning May 22, and ending on the 19th day of June, 1869, showing less than thirty days, as required by statute, whereas, in fact, publication was begun on June 15th, which the affidavit, leave to file which is asked, affirms. The court took the demurrer and the petition under advisement. Both were overruled, with leave to defendant to answer. From the decree overruling the demurrer, the defendant appealed. It is assigned for error that the court erred in overruling the demurrer and in denying the motion of appellant for leave to file amended proof of publication.

The record shows no appeal from the action of the court in overruling the motion for leave to file the amended proof of publication, the petition for appeal, the appeal bond, and the writ of error, all reciting the appeal to be taken from the decree overruling the demurrer.

In the consideration of this case, we will first proceed, under the rule that the demurrer admits the allegations of the bill, to ascertain what facts are thus established. It appears:

1. That Sartorious was a non-resident, and Belle Mann was out of the state for some time prior to the institution of the proceeding by Knowland until some time after the final decree.

2. That the decrees were based upon a publication to non-residents of only twenty-three days prior to the required time of appearance.

3. As to Belle Mann, one of the complainants, that she never employed W. B. Sloane to defend said suit for her, either by herself or any lawful agent; that she never spoke or wrote to him on the subject, nor requested or authorized any one else to do so; that he was never, in any sense, her solicitor or attorney in said cause, and never had any authority of any kind to appear for her therein; that she never knew he had entered any plea for her therein until long after said final decree.

4. That, in fact, the taxes due on said lands for the year 1862, for which they were sold and purchased by said Knowland, whose deed is sought to be canceled, were paid by the agent of Sartorious before the said sale; and that this fact was unknown to the complainants, Sarah Sherry and Belle Mann, until the rendition of said final decree, and is still unknown to said Samantha, who is out of the state, and knows nothing of this case.

5. That the tax collector never went upon the premises, nor demanded said taxes of the said Sartorious, before the advertisement and sale. The land is situated in Warren county, above the Yazoo river, opposite Milliken's Bend, and, for nearly a year prior to said sale, that portion of the country was within the power and control of the United States land and naval forces; and Vicksburg, where said sheriff lived, was within the Confederate lines, and he would not have been permitted to pass through the lines of either army. At the time of said sale, and for more than a year prior thereto, there were on said premises a large number of cattle and stock, and personal property, belonging to said Sartorious, amply sufficient to have paid said taxes many times over.

6. That, at the date of the sale, tax sales were, by law, required to be opened on the first Monday of May, which, in 1863, was the 4th day of May; whereas, in fact, the sale

was not commenced on that day, and not until Tuesday, the 5th day of May, 1863, when the sale in question took place.

7. That the taxes for which the lands were sold included the "military relief tax, $2 69," a tax levied, as is charged, for the support and benefit of the families of soldiers engaged in the war against the United States, and was intended to aid and encourage the enlistment of soldiers to resist the lawful authority of the United States.

8. That Vicksburg, the place where said sale took place, had then been under bombardment by the naval forces of the United States, for nearly a year, and at the time of the sale Gen. Grant was moving a large and powerful land force of the United States against Vicksburg, and was in the immediate vicinity to co-operate with the naval forces, and the town was actually invested in a very few days after the sale. Large numbers of the people fled for safety, and others were actively engaged in making holes or excavations under ground, for places of retreat and habitation for their families during the seige then impending.

9. That the complainant, Sarah Sherry, bought this land of Sartorious, in good faith, without any notice or suspicion that it had been sold for taxes, or that said Knowland, or any other person, held any adverse claim of any kind to it, nor had said Sartorious any knowledge, notice or suspicion of any such adverse claim, and sold in good faith.

10. Complainant, Sarah Sherry, employed W. B. Sloane to defend said case of Knowland against them. They lived in the upper part of the county, about twenty-five miles by water from Vicksburg, and there was no road or land route leading to the court-house from their place which was traveled or practicable. Said Sloane died before any decree was rendered against them, and they had no knowledge or suspicion that any decree, *pro confesso* or final, had been rendered until after the adjournment of the court when the final decree was taken.

To this array of causes for a review of the former decree,

appellant interposes the objection by demurrer, first, that Benjamin Sherry, a party to the original suit, is not made a party to this. It is averred in the bill, that Mrs. Sherry, with her own money, purchased this property of Sartorious for herself and her daughter, thus seemingly negativing any interest of Benjamin Sherry, though the conveyance of Sartorious and wife was to Benjamin Sherry, Sarah Sherry, Anastasia Mann and Belle Mann; and, as we have seen, the proceeding of appellant was against said Benjamin Sherry, with others. He is apparently a necessary party to the bill of review, or, if not, the bill should afford an explanation of the reason why his presence is unnecessary to a just and correct-determination of the rights of the parties interested. And secondly, that the complainants do not allege that the new matter set up, to wit: the allegation that the taxes in fact paid prior to the sale could not have been known to the complainants, by reasonable diligence, prior to the rendition of the final decree.

The situation of the country at the time, the ignorance of the pendency of the suit as to some, and the death of their attorney as to others who were ignorant of his death until after final decree, would seem to be a sufficient answer to this objection, and relieve the parties of the charge of laches. Counsel for appellant in his argument submits that the bill in this case is a bill of review, the rule as to which is, as he insists, that there are but two cases in which a bill of review can be sustained: 1st. When there is error in matter of law apparent in the decree sought to be re-opened; or, 2d. New matter which has arisen, or come to light since the decree was made. The error of law, he says, must be apparent upon the face of the decree, and that the evidence cannot be looked into to show the decree to be erroneous in its statement of facts. Upon the face of the bill it is somewhat doubtful, whether the appellees are seeking a rehearing under arts. 36, 37, Code of 1857, p. 456, or by bill of review under art. 55, Code, 548. A rehearing under arts. 36, 37, is a matter of course. Art. 37. We have referred,

*supra*, to the prayer of the bill, in the case at bar.  In its opening paragraphs, referring to the records and papers in the suit of Knowland v. Sartorious et al., a transcript thereof is made a "part of this bill," and the complainants add, "It being the special object and purpose to have said decree opened and the proceedings in said cause revived and corrected," the word "revived" being probably used for "reviewed" by mistake.  Considering the complaint a bill of review, the rule urged by counsel is too restricted.  Referring to the authorities, Story's Eq. Pl., §§ 408 to 410 ; 3 Bro. Ch. 639, note ; 2 Daniel's. Ch. Pr. 1632, 1633 ; Saum v. Stingley, 3 Clarke (Iowa), 514 ; Holman v. Riddle, 8 Ohio N. S. 384, the rule will be found clearly stated.  In the American practice the errors which may be alleged in support of a bill of review are not confined, literally, to the "face of the decree" as is apparently contended for by counsel, but the decree is to be treated, with us, as including the bill, answer and other proceedings, excepting the evidence at large, and all these may be looked into to find errors apparent on the "face of the decree."  Story's Eq. Pl., § 410, uses "record" as synonymous with "decree," thus, "a bill of review for errors, apparent upon the face of the record," etc.  So, also, Story's Eq. Pl., § 407 ; Adams' Eq. 417, side page, notes and cases ; Whitney v. Bank of U. S., 13 Pet. 6.  In the latter case the court said: "It has also been suggested, at the bar, that no bill of review lies for errors of law, except where such errors are apparent on the face of the decree of the court.  That is true in the sense in which the language is used in the English practice. In England, the decree always recites the substance of the bill, and answer, and pleadings, and also the facts on which the court founds its decree.  But in America, the decree does not ordinarily recite either the bill, or answer, or pleadings ; and generally not the facts, on which the decree is founded.  But with us the bill, answer, and other pleadings, together with the decree, constitute what is properly considered as the record.  And, therefore, in truth, the rule

in each country is precisely the same, in legal effect; although expressed in different language, viz., that the bill of review must be founded on some error apparent upon the bill, answer and other pleadings and decree; and that you are not at liberty to go into the evidence at large in order to establish an objection to the decree, founded on the supposed mistake of the court in its own deductions from the evidence.''

The real object of counsel is to show that complainants are concluded by the decree in the former suit, that they ought and might have made their defense therein, by the use of diligence, that they were guilty of laches, and that, therefore, a bill of review ought not now to be entertained. The appellant seeks to bind the appellees by a decree, which, without an amendment of the record upon which it is based, cannot be sustained. Seeking to amend that record at the very moment the parties interested are knocking to be heard in that case, it would be strange indeed if the record should be amended at such a time in a vital particular, at least, without first opening the decree to those parties for a full defense. "He who seeks equity must do equity," is an honored rule, and it may be affirmed as equally just, that he who asks a court to hold parties concluded by a record, yet is compelled to ask the aid of the court to amend that record, to render it effective for any purpose, ought, in equity, to yield an equivalent, in the discretion of the court, according to the justice of the case, to the other party.

By the act of February 10, 1860, in virtue of which the proceeding to confirm the tax title was undertaken, thirty days' notice, posted at the court-house door of the county in which the lands lie, and in a newspaper printed and published in said county, are required. Notice is not required by that law to be mailed to the defendant, and if it were, the unsworn certificate of the clerk would not be proof of the fact.

One of the grounds by which a tax title may be impeached

by the above law (§ 7) is proof of payment of the taxes prior to the sale, which is a fact admitted by the demurrer.

It is the duty of a tax collector to collect taxes of the personal property of a tax payer before resorting to the realty. Art. 34, Code of 1857, p. 79.

When a judgment or decree is obtained against a party by the appearance of an attorney without authority, chancery will grant relief, provided the attorney is unable to respond in damages.    Schirling v. Scites, 41 Miss.    The death of an attorney, by which judgment is obtained in a case wherein he appears without authority, presents a case entitled to the favorable consideration of a court of chancery.

If it is possible to conceive a case wherein argument is superfluous, and reasons only a labor supererogatory, it would seem that such is the case under consideration.    Of the numerous grounds, upon any one of which, appears at present, the decree confirming the tax title ought to be reviewed, we may mention the following as conclusive of the rights of the appellees :  1st. The military situation at the time and place of the sale ; 2d. The prior payment of the taxes by the agent of Sartorious ; 3d. The error of law apparent upon the face of the record in making a decree without proof of the publication required by statute.

As to the other causes stated in the bill we express no opinion ; but for the non-joinder of Benjamin Sherry as a party to this proceeding, and in the absence of any averments showing his presence unnecessary, we are compelled to reverse the action of the court below in overruling the first cause of demurrer, and we remand this case with leave to the complainants to amend.