## BALTZELL *et al. v.* NOSLER.

In an action on a judgment rendered in another state, the defendant may deny
the authority of the attorney who appeared for him in the original action.
Suggestions as to pleadings and making up transcripts.

### *Appeal from the Marion District Court.*

THIS suit was brought by Baltzell and others against Nosler, on a judgment rendered in the state of Indiana. Judgment was rendered against the defendant. The facts are sufficiently stated in the opinion of the court.

*Eastman & Rice,* for the appellant.

*Knapp & Caldwell,* for the appellees.

WOODWARD, J. (1)—This action was brought on a judgment recovered in Indiana, which was rendered on confession, by one Edward W. McGaughey, by virtue of a warrant of attorney. The record is in great confusion, and it is difficult to ascertain the true state of the case. One thing, however, appears, which is the only one which we will attempt to decide. The defendant denies the authority of McGaughey to appear and confess. Among the papers there is no denial of this matter; but there is a demurrer to it, and the demurrer is sustained. The connection between this answer and this demurrer, is shown by the *matter* of them.

These pleadings raise the question, whether the defendant may deny the authority of the attorney who appeared for him in the action in Indiana. We believe he may. The subject of pleading to judgments recovered in sister states, of what statements in the record may be denied, and similar questions, have undergone much discussion in the following cases: *Green* v. *Samiento,* 1 Pet. C. C. 74; *Mills* v. *Duryee,*

---

(1) WRIGHT, C. J., having been of counsel, took no part in the decision.

7 Cranch, 481; *Bissell* v. *Briggs*, 9 Mass. 462; *Field* v. *Gibbs*, 1 Pet. C. C. 155; *Hampton* v. *McConnell*, 3 Wheat. 234; *Benton* v. *Burgot*, 10 S. & R. 240; *Borden* v. *Fitch*, 15 Johns. 121; *Andrews* v. *Montgomery*, 19 Johns. 162; *Hall* v. *Williams*, 6 Pick. 232; *Harrod* v. *Barretto*, 1 Hall, 155; *Newell* v. *Newton*, 10 Pick. 472; *Starbuck* v. *Murray*, 5 Wend. 148; *Shumuay* v. *Stillman*, 6 Wend, 447; *S. C.*, 4 Cowen, 292; *Alrich* v. *Kinney*, 4 Conn. 380; *Welch* v. *Sykes*, 3 Gil. 198; *Ewer* v. *Coffin*, 1 Cush. 24; *Dennick* v. *Brooks*, 21 Vert. 569, 580; *Jaquette*, v. *Hugunon*, 2 McLean, 129; *Lincoln* v. *Tower*, 2 Ib. 473; *Westervelt* v. *Lewis et al.*, 2 Ib. 511. See, also, as cases referred to, Breeze, 128; 1 Ohio, 259; 2 Vert. 263–8; 1 Kent. 260; 1 N. H. 242; 2 Leigh, 172; *Britchett* v. *Clark*, 3 Harr. 517, and 4 Ib., same case, reversed.

The question in the case at bar, whether the defendant can deny the authority of the attorney·in the former cause, to appear for him, is decided in the affirmative, in the above cases in 6 Wend. 447; 3 Gil. 198; 4 Conn. 380; and 6 Pick. 232, is cited on the same side. The proposition of law, on which these cases proceed, is, that the jurisdiction of the court over the person may be denied. And when the pleading arrives at such a point, as that in this case, it becomes an issue of fact.

This allegation, therefore, in the answer, was well pleaded, and the court erred in sustaining the demurrer.

The allegations as to the defendant's liability, under the former judgment, are put in various forms, and it may not be improper to make a suggestion: It is not sufficient to allege, that the defendant was not a resident of that state; nor that he was not within that state; nor that he had no notice of the suit; nor that he was not served with process; he must follow any or all of these averments, by one *that he did not appear;* and if the record states that he appeared by attorney, he must deny the authority of the attorney, if the truth warrants him in it; and this is conceived to be the extremity of denial of the record. Whether he may deny that he appeared, or that an attorney appeared, when the record says he did, is discussed in some of the later of the above

cited cases. See 6 Pick. 232; 5 Wend. 148; 6 Wend. 447; 3 Gil. 198.

On account of the omission of papers, or of the want of proper reference to them, or identification of them, we cannot venture to decide other questions in the case, and we have deemed it better to determine the one above, and put the cause in progress, than to hold it hung up in court.

We feel justified in availing ourselves of the occasion presented by this case, in making a suggestion in relation to pleadings, and the manner of preparing papers for this court. Many attorneys among us are young in the profession, and of the clerks of the courts, many have had no experience, and very few are lawyers. In consequence, causes come to this court which are difficult to adjudicate, on account of the state of the papers; and sometimes, if the court undertakes it, it is done at a hazard of doing injustice; yet the court is unwilling to send the parties away, because the clerk has prepared his transcript badly. The case at bar, for instance, cannot be adjudicated, upon several questions which were probably raised. There is both omission and commission, and also want of identification of papers. The original answer, and one or more bills of exception, which are referred to in other papers, are omitted. Several papers do not show to what dates and stages of the case they belong. The transcript should be made similar to a complete record, by taking the record of the proceedings of the court as a basis, and incorporating in that record each paper filed, in its proper *place and date*. The transcript should not consist of *merely naked copies* of papers, but should contain sufficient explanation by the clerk, to show their order, dates, and connection. In the present case, the copy of the record of proceedings is on one paper, by itself, and every other paper of the case is copied separately, on distinct pieces of paper, and these copies are then attached together, miscellaneously, without any regard to the order in which they arose. Papers which belonged to a bill of exceptions, and were attached to it, and referred to in it, by the letters A, B, C, &c., are copied and put separately in the mass. In the

Baltzell et al. v. Nosler.

case of some papers, we are left to find the *date* of its coming into the case, by the indorsement of filing *on the back of the copy*, and sometimes there is nothing to show where it belongs in the case.

In regard to pleadings, one or two general remarks will not be considered improper. The practice in some parts of the state, conveys to the mind the idea, that we are prohibited by the Code from any degree of assimilation to the common law forms, and that we must *depart* from those as far as possible. The Code abolishes *forms* of actions, and it requires but *very few* new averments. But why should not a cause of action, or a defence, be laid, *in its substance*, very much after its former manner. Can we make them more brief, accurate and comprehensive? The averment of the *facts* constituting the cause of action or defence, is still, and more than ever, if possible, the body and substance of the pleading. The Code contemplates, it is apprehended, that we should look to these essential facts, and allege them simply. The greatest departure, and the one producing the greatest confusion and doubt, is the practice of alleging, in the answers in actions at law, a great variety of *circumstances* and *collateral facts*, which go to confuse the pleading, and are far from aiding in the formation of the issue. These resemble answers in chancery, but are much out of place, as they render it more difficult to ascertain the real issue. In an action at law, the result is always single—yes, or no—promise, or no promise—guilty, or not guilty. But in equity, it is not so; the result or decree may be partly one way and partly another; in part for the complainant, and in part for the respondent; it is modified by various circumstances; and therefore, these circumstances are properly set forth in the pleading. The very *nature* of the cases, points to the essentially distinctive features of the two jurisdictions, and, at the same time, dictates the difference in the pleadings.

In the case at bar, the pleadings are not so subject to these remarks, as in many other causes, yet there is repetition and prolixity in them. The averment, that the de-

fendant had no notice of the former action, is made *three* times. The statute of limitations of 1851, is pleaded *three* times. And the authority of the attorney to appear in the former action, is *twice* denied. As, when the Code says that various causes of action *may* be united in one petition, it does not *recommend* such practice; so, when it abolishes *forms* of action and pleadings, and provides that certain kinds of defects shall not be *fatal*, it does not recommend a total *departure* from all that we have been used to, and an indulgent rioting in disorder and confusion. For instance, though we may unite several causes of action in one petition, why should we now, any more than under the former practice, huddle them all into one count. Not only the common law *manner*, but clearness, distinctness, convenience, good logic, and professional propriety and order, dictate that we should lay them in separate counts, and make the defences separately and distinctly; and that a set-off should not be mingled with matter of defence proper. The pleadings under the Code, are capable of being made simple and neat, and generally about as brief and comprehensive as at common law. Such a result is very desirable, but the power of accomplishing it lies principally with the District Court. The Code provides *general* rules and directions, but has left the *details* to be reduced to order and symmetry by the courts; and sections 1589, 1590, 1591, 1735, and 1753, confer ample authority for this purpose.

The judgment of the District Court is reversed, and a writ of *procedendo* will issue, directing the said court to proceed in conformity with this opinion.