MELISSA P. DODGE ET AL. v. E. PHELAN ET AL.

No. 72.

1. **Void Administration.**—Intestate died in 1836 at the Alamo, a resident of Brazoria County. At the February term, 1837, of the Probate Court of said county, Henry Austin was appointed administrator. At the February term, 1838, Austin rendered an exhibit and account and was permitted to resign, and he surrendered the assets. At the same term Ferris was appointed and accepted. At the June term, 1840, one Davis was appointed administrator, and at the May term, 1841, he reported that he was unable to find any property of the estate, and at his own request his letters of administration were revoked. At the December term, 1856, Masterson was appointed administrator de bonis non of the estate, and qualified. In August, 1861, Masterson as administrator sold a bounty land warrant issued in the name of the deceased. This sale was regular in form, and was approved, and deed made to the purchaser. In a suit by heirs against parties holding under said sale, *held:*

1. Under the laws in force from 1836 to 1846 the term of administration was limited to one year only, but could be extended from year to year not exceeding five years.

2. If the act of the court, May, 1841, revoking the letters to Davis, did not close the administration, the failure to make an order to continue it after June, 1841, did close it.

3. There being no administration pending in 1856, the action of the court appointing Masterson was null and void, and his sale passed no title.

2. **Estoppel, Facts Held not to be.**—In the close of an administration held void for want of jurisdiction, that an heir was represented in partition by counsel appointed by the court does not estop the heir from attacking the administration, it not appearing that the heir received any of the assets from the administrator.

3. **Idem Sonans.**—*Nuckols* and *Nichols* are not idem sonans.

4. **Tenant Repudiating Lease.**—A tenant holding under a superior title may repudiate his tenancy under another, and dispute the title of his landlord.

APPEAL from Lampasas. Tried below before Hon. W. A. BLACKBURN.

*W. B. Abney*, for appellants.—1. The County Court of Brazoria County was a court of record of general jurisdiction over all matters relating to the administration of the estates of deceased persons; and having assumed to exercise jurisdiction in the appointment of Thos. G. Masterson as administrator de bonis non of the estate of Green B. Jamison, all presumptions are in favor of the validity of its proceedings; and if the record of said court shows that the steps necessary to clothe it with power to act in said case were taken, or if the record be silent upon this point, then its judgment, order, or decree must be held conclusive in any other court of the same sovereignty, when collaterally called in question. Martin v. Robinson, 67 Texas, 370; Bradley v. Love, 60 Texas, 475; Brockenborough v. Melton, 55 Texas, 493; Murchison v. White, 54 Texas, 82; Guilford v. Love, 49 Texas, 715; Kleinecke v. Woodward, 42 Texas, 311; Frost v. Frost, 45 Texas, 341; Poor v. Boyce, 12 Texas, 449; Burdett v. Silsbee, 15 Texas, 616; Portis v. Cummings, 14 Texas, 140; Main v. Brown, 72 Texas, 508.

2. The estate of Green B. Jamison being unsettled in December, 1856, and being unrepresented, the Probate Court had the power to appoint an administrator de bonis non to close up said estate; and having appointed an administrator de bonis non, a sale made by him under an order of said court, for the purpose of partition and distribution among the heirs, and approved by said court, would divest the heirs of any title to the property sold. Pasch. Dig., art. 1350.

3. The defendants having deraigned title through Mary S. Nuckols, who was a party to the partition proceedings in the Probate Court of Brazoria County, under which the 1920 acres certificate covering the land in controversy was sold, are estopped from setting up any invalidity of said sale for partition. Edwards v. Dickson, 66 Texas, 613; Favill v. Roberts, 50 N. Y., 222; Bige. on Estop., 479, 480.

*Essex & Prigmore*, for appellees the Montgomerys.—1. The administration on the estate of Green B. Jamison was closed in 1841 by the revocation of the letters of Thomas R. Davis, the cancellation of his bond, and his release from further liability; the estate, if there was any, being

then fully administered for all purposes except partition and distribution, and whatever portion of the estate then remained vested in the heirs, and could only be divested for the payment of debts, if at all.   Withers v. Patterson, 27 Texas, 500; Fisk v. Norvel, 9 Texas, 13; Hurt v. Horton, 12 Texas, 288; Blair v. Cisneros, 10 Texas, 36.

2.  After the lapse of fifteen years from the discharge of Davis, in 1841, without any further order in said administration, either extending the same or in some way recognizing its existence, and in the absence of any person acting in the capacity of administrator, the court will presume that the administration was closed; and this presumption could only be rebutted by proof that a necessity for administration existed.   Paul v. Willis, 69 Texas, 261; Wardrup v. Jones, 23 Texas, 489; Marks v. Hill, 46 Texas, 350; Duncan v. Veal, 49 Texas, 610; Boyle v. Forbes, 9 Texas, 39; Harwood v. Wylie, 70 Texas, 538; Martin v. Robinson, 67 Texas, 368.

*Mathews & Wood*, for appellee Phelan. — 1.  The estate of Green B. Jamison having vested in his heirs long before the passage of the act of 1848 governing the administration of the estates of deceased persons, the administration granted in 1856, through which appellants claim, was a nullity.  Paul v. Willis, 69 Texas, 261; Harwood v. Wylie, 70 Texas, 541; Blair v. Cisneros, 10 Texas, 35; Fisk v. Norvel, 9 Texas, 15; Murphy v. Menard, 14 Texas, 62; Francis v. Hall, 13 Texas, 189; Wardrup v. Jones, 23 Texas, 489; Cochran v. Thompson, 18 Texas, 652; Duncan v. Veal, 49 Texas, 604; Hart. Dig., arts. 983, 1026; Pasch. Dig., 1 ed., 328, 329; Portis v. Cummings, 14 Texas, 139.

2.  The record does not show that Mary S. Nuckols was a party to the partition proceedings in 1861, under which the land certificate was sold. The transcript of the proceedings of the Probate Court shows, that '' Mary Nichols, who resides in Alabama, was represented by C. Terry, attorney at law.''   Appellee Phelan does not claim through Mary Nichols, but through Mary S. Nuckols.

KEY, ASSOCIATE JUSTICE.—*Findings of facts.*  1.  That a man by the name of Green B. Jamison went from the State of North Carolina to Texas in the year 1835 or 1836, and enlisted in the Texas army in the war between Texas and Mexico, and was killed in what is called '' Fannin's Massacre,'' at Goliad, Texas.

2.  That at the time of his death he was a soldier from a '' foreign State '' enlisted in the Texas army.

3.  That he was the father of the plaintiff John Jamison.

4.  That prior to the year 1836 another man by the name of Green B. Jamison emigrated from the State of Kentucky to Texas, while the latter was a part of the Mexican Government.

5. That during the war between Texas and Mexico he was a soldier in the Texas army, and was killed at the battle of the Alamo, Texas, in 1836.

6. That at the time of his death he was a resident citizen of Brazoria County, Texas.

7. That plaintiff John Jamison is not an heir of said Green B. Jamison who was a resident of Brazoria County.

8. That said Green B. Jamison was never married.

9. That he was the son of William and Jane Jamison, and said parents are dead.

10. That Mary S. Jamison was a sister of Green B.; that in 1819 she married Pouncy Nuckols, who is dead, and that Mary S. is dead.

11. That the defendant S. L. Jamison is a daughter of Pouncy and Mary S. Nuckols, born in 1830.

12. That the father, mother, and following named brothers and sisters of Green B. Jamison survived him, to-wit: Gillie Ann Jamison, Mary S. Jamison, Julia Ann Jamison, Emily Jamison, Estang Jamison, Eloisa Jamison, Willis Jamison, and Hawkins Jamison, some of whom are probably living, but others are dead, without issue living.

13. That on the 18th day of June, 1851, a bounty warrant or certificate for 1920 acres of land issued to said last mentioned Green B. Jamison.

14. That by virtue of said bounty warrant a patent from the State of Texas issued to the heirs of said Green B. Jamison, dated on the 23rd day of November, 1875.

15. That at the February Term, 1837, of the Probate Court of Brazoria County, Texas, Henry Austin was appointed administrator of the estate of said Green B. Jamison.

16. That at the February Term, 1838, of said Probate Court, said Henry Austin exhibited his account as administrator of said estate, and at his request he was allowed to surrender the estate, and was discharged from the trust, and surrendered the books, accounts, and assets of the estate.

17. That at said February Term, 1838, of said court, after said discharge of said Henry Austin as administrator as aforesaid, Willis A. Farris was appointed administrator of said estate, who accepted said appointment.

18. That at the June Term, 1840, of said Probate Court, Thomas R. Davis was appointed administrator of said estate.

19. That at the May Term, 1841, of said Probate Court, said Davis reported to said court that he was unable to find any property belonging to said estate, and at his request his letters of administration were revoked and his bond cancelled.

20. That at the December Term, 1856, Thomas G. Masterson was appointed administrator de bonis non of said estate, and qualified as required by law.

21. That from the revocation of the letters of administration to Davis at the May Term, 1841, of said court, to the appointment of Masterson in 1856, no other order was entered in said court in regard to said estate.

22. That on the first Tuesday in August, 1861, said bounty warrant was sold at public outcry, and purchased by J. W. Crafton at the sum of 35½ cents per acre, he being the highest and best bidder therefor.

23. That the authority of said Probate Court to said administrator Masterson to sell said warrant was obtained regularly and according to the forms of law in such cases made and provided; that the sale was legally advertised and the warrant was sold at the time and place and in the manner prescribed by law; that the report of the sale by Masterson and confirmation of the same by said court were regular and legal, as were all the acts of the administrator and orders of the court in regard to the sale of said warrant.

24. That pursuant to the order of said court, said Masterson, on the 11th day of October, 1861, conveyed said warrant to the said purchaser, John W. Crafton, by written transfer, which was duly acknowledged on the 12th of February, 1870, and recorded in Lampasas County on the 27th day of December, 1875.

25. That on the 2d day of February, 1870, said John W. Crafton conveyed said warrant to William E. Dodge; said conveyance was recorded in Lampasas County on the 27th day of December, 1875.

26. That Melissa P. Dodge is executrix, and William E. Dodge, Jr., and D. Stuart Dodge are the executors of the estate of William E. Dodge, now deceased, and are the intervenors in this case.

27. That on the 12th day of November, 1877, Mary S. Nuckols, the surviving wife of Pouncy Nuckols, and sister of Green B. Jamison, conveyed an undivided half-interest in the land so granted as aforesaid to the heirs of said Green B. Jamison, to J. T. Smith, and which was recorded in Lampasas County, on the 6th day of April, 1877.

28. That on the 12th day of July, 1879, said J. T. Smith conveyed to A. H. Montgomery an undivided fourth of said 1920 acres of land, and which was duly recorded in Lampasas County on the 14th day of August, 1879.

29. That under a deed from A. F. Baker and wife, Emma Baker, dated October 21, 1882, the defendant E. Phelan purchased an undivided fourth-interest in said land, which was properly conveyed by mesne conveyances from said J. T. Smith to said A. F. Baker and wife.

30. That on the 29th day of March, 1884, the defendant Evan Phelan leased the land in controversy from the intervenors in this case, said lease to continue until the 1st day of January, 1887. After the expiration of the lease, the defendant Phelan reasserted his right to said land, and took possession of the land for himself and his codefendants, except Montgomery.

31.  That J. T. Smith conveyed an undivided fourth-interest in the land in controversy to Charles Haughn, by deed dated March 12, 1877, which deed was recorded in Lampasas County on March 28, 1877, and the defendant Phelan holds by regular chain of title from said Charles Haughn.

32.  That sometime in the spring of 1887, the attorney of the estate of William E. Dodge demanded of the defendant E. Phelan to know whether he wished to surrender the land leased to him by the intervenors on March 29, 1884, and the defendant Phelan then promised to give the intervenors a reply in a few days; and that afterwards, about May 1, 1887, said Phelan accepted a lease from W. K. Henderson, as administrator of Mary S. Nuckols and S. L. Jamison, without having surrendered said land to intervenors, and has since that time held the same for himself and as a tenant of said W. K. Henderson and S. L. Jamison.

33.  The evidence does not show that Mary S. Nuckols was a party to the partition proceedings in the Probate Court of Brazoria County had in 1861, when said 1920 acres certificate was sold; but it does show that Mary *Nichols* was a party thereto, represented by an attorney appointed by the court.

34.  Masterson's appointment as administrator de bonis non was made on the following application:

"*The State of Texas, County of Brazoria.*—To the Hon. S. W. Perkins, Chief Justice of Brazoria County: Your petitioner, Thomas G. Masterson, respectfully represents to your honor, that sometime in the year 1836 Green B. Jamison, a resident of Brazoria County, departed this life intestate. That sometime in the year 1837 Captain Henry Austin took out letters of administration on the estate of said Green B. Jamison, but in 1837 or 1838 he surrendered to the honorable Probate Court said letters, without having fully administered said estate. He further represents, that said estate or the heirs thereof are entitled to considerable land from the government of Texas, and that the heir of said Jamison has requested your petitioner to ask for letters of administration on said estate, in order that said land claim may be gotten from the said government. Your petitioner therefore prays for letters de bonis non upon said estate, and for all other and necessary orders touching the same.

"Filed December 9, 1856.

[Signed]                              " Thomas G. Masterson."

*Opinion.*—This suit was instituted by John Jamison, as plaintiff, against E. Phelan, as defendant, to recover 1920 acres of land, patented by the State to the heirs of Green B. Jamison.

Melissa P. Dodge, W. E. Dodge, Jr., and D. Stuart Dodge, as executrix and executors of the estate of William E. Dodge, deceased, intervened, claiming the land for said estate, and impleaded William B., Mattie, Carrie B., Nannie M., and Bessie Montgomery, Mrs. S. L. Jamison (a feme

sole), W. K. Henderson (as administrator of the estate of Mary S. Nuckols), and the unknown heirs of said Mary S. Nuckols.

E. Phelan impleaded two of his warrantors, asking, in the event that he lost the land claimed by him, for judgment against said warrantors.

There was no jury in the case, and the court rendered judgment against the plaintiff and also against the intervenors, and in favor of defendants as follows: Mrs. Mary S. Nuckols' estate and Mrs. S. L. Jamison, one-half; E. Phelan, one-fourth; the Montgomerys, one-fourth; and for Ellis and Baker, Phelan's warrantors, for costs.

Intervenors, the representatives of the Dodge estate, have appealed.

The title of the Dodge estate is founded upon a sale made in August, 1861, by Thomas G. Masterson, as administrator of the estate of Green B. Jamison, and the first assignment of error challenges the correctness of the court's ruling in holding that the letters of administration granted to said Masterson as administrator de bonis non of said estate were nullities.

Green B. Jamison, to whom the certificate issued by virtue of which the land in controversy was patented, was killed at the Alamo in 1836, and between February, 1837, and July, 1840, three successive administrators of his estate had been appointed by the Probate Court of Brazoria County; and in May, 1841, Thomas R. Davis, the last of the three, reported to the court that he was unable to find any property belonging to the estate, and at his request his letters of administration were revoked and his bond cancelled.

After the revocation of Davis' letters of administration, no other order was made by said court in regard to the estate until the December Term, 1856, at which time Thomas G. Masterson was appointed administrator de bonis non of the estate.

Under the laws in force from 1836 to 1846, the term of an administration was limited to one year only, but could, upon sufficient cause shown, be extended by the court from year to year, not exceeding five years. Davis, the last administrator before Masterson, was appointed in June, 1840. Under the law as it then existed, his administration would have terminated in June, 1841, unless an order was made continuing it another year. This was not done; but on the contrary, in May, 1841, his letters were revoked and his bond cancelled. If this last action of the court did not close the administration, then the failure to make an order continuing it after June, 1841, did close it; and there being no administration pending in 1856, when Masterson was appointed administrator de bonis non, the action of the court appointing him was null and void. That the administration had terminated, see, Flores v. Howth, 5 Texas, 329; Boyle v. Forbes, 9 Texas, 36; Murphy v. Menard, 14 Texas, 65; Portis v. Cummings, 14 Texas, 139.

It becomes unnecessary, therefore, to decide the effect to be given to the fact that nothing was done in the Probate Court for over fifteen years

o

prior to Masterson's appointment, or to consider other matters bearing upon the validity thereof.

It is also contended, that Mary S. Nuckols was a party to the probate proceedings in which Masterson sold the certificate, and that she and those claiming under her are estopped. The evidence does not sustain this contention. It shows that Mary *Nichols* was represented in the partition proceedings by an attorney appointed by the court. But Nuckols and Nichols are not the same names. But if they were, the facts disclosed fall far short of an estoppel.

The judgment being void, the mere fact of an attorney appointed by the court appearing for Mary Nuckols would not operate as an estoppel against her, in the absence of proof that she received any benefit under the judgment.

It is insisted, however, that appellants were entitled to recover, on the theory that appellee Phelan had become their tenant, and was holding over after the expiration of the lease.

It is shown, that in March, 1884, while Phelan in fact owned an undivided interest in the land, he entered into a lease contract with appellants for the whole of it for a term of three years, and agreed to surrender possession at the expiration of the lease. At the time of making the lease contract, appellants' attorney told Phelan, that in his opinion the appellants' title to the land was superior to the title Phelan had acquired from the heirs of Green B. Jamison. When the term of the lease ended, Phelan refused to surrender possession, and held the same for himself and as tenant of Mrs. S. L. Jamison and the estate of Mrs. Mary Nuckols.

These facts brought Phelan within one of the exceptions to the general rule which does not permit a tenant to dispute his landlord's title. Holding under a superior title to the Dodge estate, the law permits him to repudiate his tenancy and dispute the title of his landlord. McKie v. Anderson, 78 Texas, 207.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Delivered February 15, 1893.