HIRSCH BROS. & Co. v. R. E. KENNINGTON Co.

(In Banc. Oct. 28, 1929. Suggestion of Error Overruled Nov. 18, 1929.)

[124 So. 344. No. 28013.]

R. H. and J. H. Thompson, of Jackson, for appellant.

**R. B. Ricketts** and **Hendrix, Burkett & Forman,** all of Jackson, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

This is an appeal from the chancery court of Hinds county dismissing a bill for injunction and awarding

damages. The injunction was sued out against a judgment, seeking to cancel the judgment, procured by R. E. Kennington Company against appellant in a garnishment proceeding, instituted upon a judgment in favor of R. E. Kennington Company against Mr. and Mrs. C. W. Donnell.

In August, 1924, R. E. Kennington Company instituted a suit on open account in the court of J. H. Penix, police justice of the city of Jackson and ex officio a justice of the peace, against Mr. and Mrs. C. W. Donnell. The Donnells were served with personal summons, but the judgment against Donnell was not rendered until the 11th day of September, 1924, at which time a judgment was rendered against C. W. Donnell and Mrs. C. W. Donnell for one hundred thirty-nine dollars and forty-five cents, with interest and costs. On September 26, 1924, Kennington Company filed a paper in the justice of the peace court suggesting that Hirsch Bros. of Louisville, Ky., were indebted to the defendant in the judgment, and suggested the issuance of a writ of garnishment against Hirsch Bros., of Louisville, Ky. On the same day the justice of the peace entered this garnishment proceeding on his docket, naming the garnishees as Hirsch Bros., and issued a writ of garnishment to be served on Hirsch Bros., Louisville, Ky.

On the 27th day of September, 1924, the city marshal, through a deputy, served the writ of garnishment, issued against Hirsch Bros., upon C. W. Donnell, one of the defendants in the judgment. In making a return of this service, the marshal returned that it was served upon "C. W. Donnell (Agt.)," without reciting therein that Donnell was the agent of Hirsch Bros. & Co., and it does not appear that the copy of the summons sent registered mail to Hirsch Bros. & Co., contained the officer's return showing service upon C. W. Donnell, agent. The summons in the record is a summons without specifying on

its face anywhere or in any manner that C. W. Donnell was agent, and does not show the officer's return thereon.

On the 29th day of September, 1924, the justice of the peace entered upon his docket a certificate to the effect that he had, on that day, mailed a copy of the writ of garnishment to Hirsch Bros., Louisville, Ky.

On November 2, 1924, an attorney of the city of Jackson appeared in the justice of the peace court and filed a writing purporting to be the entry of a special appearance by the complainant, Hirsch Bros. & Co., objecting to the service of the writ of garnishment because served on a mere employee and not upon an agent of the garnishee upon whom process could legally be served. This motion to quash the process was overruled, and no further proceedings were taken by the attorney, and no notice given to Hirsch Bros. & Co. of such appearance and action by said attorney.

The notice mailed by the justice of the peace to Hirsch Bros. was received by Hirsch Bros. & Co., a corporation, and the return for it was filed in the justice office on October 9, 1924. On November 11, 1924, no answer having been filed to the garnishment, the justice of the peace rendered a judgment by default against Hirsch Bros. & Co., as garnishees, for failure to answer the writ of garnishment. Afterwards a motion was presented to correct a date in the judgment, and the attorney who appeared to quash the proceeding was served with this motion to correct.

On December 22, 1924, the justice of the peace sustained said motion to correct the judgment. Subsequently R. E. Kennington Co. filed a suggestion in garnishment on the judgment rendered against Hirsch Bros. & Co., suggesting that H. T. Cottam & Co., doing business in the city of Jackson, Miss., was indebted to Hirsch Bros., & Co. When this garnishment was served upon Cottam

& Co., that corporation notified Hirsch Bros. & Co., and thereupon Hirsch Bros. & Co. wrote the justice of the peace that it did not owe R. E. Kennington Company anything, and did not know such persons. Hirsch Bros. & Co. was then informed by the justice of the peace of the proceedings against Hirsch Bros. & Co. and the taking of the judgment against them as shown in the preceding statements. Thereupon Hirsch Bros. & Co. secured an attorney to file an injunction to prevent further proceedings thereon and to cancel the same, alleging in the bill that they were not indebted to the said C. W. Donnell at the time of the institution of the garnishment proceedings, and that they had never employed the attorney above mentioned, or any attorney to represent them in such proceedings, and that such appearance was wholly unauthorized, and that they knew nothing of it until advised by the justice of the peace thereof long after the judgment had been rendered against them; and averring that the said attorney had never given them any notice of his having been retained by anybody to represent them, and that he had not given them notice of any action taken by him in reference to the matter, and that he had no authority whatever to appear for or represent them in said proceedings, that they had never had any correspondence with him, that they had never paid him any fee, and that they had not authorized any one to employ him to represent them. It further alleged that they did not owe C. W. Donnell anything at any time, either at the rendition of the garnishment or any time subsequent thereto, but on the contrary that Donnell owed them. It further set up that Cottam & Co. was not indebted to them at the time of the service of the garnishment on H. T. Cottam & Co.

Deposition of the officers of the complainant, Hirsch Bros. & Co., was taken, and these officers testified that Donnell had no authority to employ any attorney for

them, and that they had no knowledge of it having been done, and that they had never employed the said attorney, nor authorized anybody to do so, and that they had no knowledge of that fact until long after the judgment had been rendered against them in the cause above mentioned. They testified as having received the copy of the summons of the justice of the peace, but that they understood that a service of that kind through the mail from one state into another state had no legal efficacy or validity, and that they did not know of Donnell being served as their agent and so advised the justice of the peace, and that they did not know of the judgment rendered against them until it had been rendered. They further testified that Donnell was merely employed as a soliciting agent, or commercial traveler, for the purpose of procuring orders and customers in Mississippi to be sent to and passed upon and approved or rejected by the corporation at Louisville, Ky., and that they had no property or place of business in the state of Mississippi, and no agents in the state authorized to receive or accept process upon them in any respect whatever; that the entire function of the agent was as above stated, except that he was permitted to go with solicitors of wholesale houses and jobbers buying products from complainant for the purpose of assisting such jobber or wholesaler to procure orders so that, as an incident thereof, Hirsch Bros.' business in interstate commerce could be facilitated. In other words, the testimony showed, and there was no dispute as to this, that Donnell merely solicited orders to be sent to Hirsch Bros. & Co. at Louisville, Ky., to be accepted or rejected by them, and had nothing to do with the shipment of the goods, or delivery, or collection of the amounts due Hirsch Bros. & Co. from such sale. The only function, then, of Donnell, was strictly soliciting orders for Hirsch Bros. & Co., and to aid their customers in Mississippi in making sales to retailers and others buying from them, and that such job-

bers and wholesalers received the entire proceeds· and profits of such business, and that Hirsch Bros. & Co. had no interest in the goods sold by the jobbers and whole salers to the retailers. They further testified that on one occasion H. T. Cottam & Co. had ordered certain goods from Hirsch Bros. & Co., which the officers of Hirsch Bros. & Co. regarded as a valid contract, and that the goods were shipped on this order, but, when they reached the destination at Jackson, Miss., H. T. Cottam & Co. refused to accept the goods because they contended that the party that bought them did not have authority to do so. On this occasion, as an inducement to H. T. Cottam & Co. to accept the goods and sell them, they loaned one of their salesmen to Cottam & Co. to solicit orders from retailers.

The first question presented for consideration is whether the appearance of the attorney above mentioned in the justice of the peace court, and the filing of the paper therein by him under circumstances stated, was binding upon Hirsch Bros. & Co., and whether the judgment so rendered is void because of said attorney having no contract of employment and no authority to represent Hirsch Bros. & Co. in the said matters. It appears from the agreed testimony of the attorney that he was the attorney of Donnell, and was employed by Donnell to file the paper on behalf of Hirsch Bros. & Co., and he thought that Donnell had the power to do so. The testimony, however, is undisputed that Donnell did not have such authority, and Donnell's evidence was not taken in the matter, and consequently the retainer of the said attorney was wholly unauthorized.

It is contended, however, that the judgment is valid notwithstanding this, because of certain decisions in this state (Knowland v. Sartorious, 46 Miss. 45; Schirling v. Scites, 41 Miss. 644; Miller v. Ewing, 8 Smedes & M. 421; Jones v. Hunter, 4 How. 342; Henderson v.

Hamer, 5 How. 525) holding, in effect, that an appearance by an attorney, although unauthorized, bound the party for whom he appeared, and that the remedy of the injured party in such case is an action for damages against the attorney. But in a later case of Weems v. Vowell, 122 Miss. 342, 84 So. 249, this court, without having its attention called to the above-mentioned cases, decided that a judgment obtained by unauthorized appearance by an attorney was void and would be enjoined in equity. The attention of the court in that case was not called to the preceding cases, above named, holding contrary, although the attorneys appearing for the appellee in whose interest these cases would hold, if sound, were distinguished ex-judges of this court, now gone to their final reward. The decisions of the court first rendered, above cited, if not overruled by the later case, are contrary to what we conceive to be the great weight of authority in this country. In Hogatt v. Bingaman, 7 How. 565, it was held that, where there are conflicting decisions of this court on the same point, the first wrong and the last right, this court will adhere to the last decision, even where a course of practice in relation to the giving of notice of protests of bills and notes has grown up under the first decision, which would cause loss and inconvenience by its reversal.

In the last case upon this subject, Weems v. Vowell, 122 Miss. 342, 84 So. 249, this court said, at page 351 of the Mississippi Report, page 250 of the Southern Reporter:

"It clearly appears from the evidence in the case that the attorney for S. C. Weems in the first injunction suit had no authority from any one to join appellant as a party to said cause. It further appears to the satisfaction of the court that Mrs. Weems, the appellant, was not a surety upon the injunction bond in said cause.

"We think the law is well settled that no person can be made a party complainant to a suit without their knowledge or consent, no matter what motive may have influenced the attorney or what good may have, in his opinion, resulted to the complainant by making her a party, and that his action in so doing was unwarranted, fraudulent, and void. The joining of a party complainant in a suit without authority so to do is necessarily a fraud in law, without regard to the motive actuating the attorney in taking such action, and it is clearly settled that equity will relieve by injunction, and by other appropriate relief, against a judgment rendered against a party where there was no authority for joining such party in the suit."

The court then reviewed certain cases upon the effect of fraud upon judgment and then said (page 354, Mississippi Report, 84 So. 251):

" 'A court of equity in the exercise of a broad discretion should see that wrong and oppression are not inflicted under the guise of legal procedure, but that justice is done as the very right of each case may demand.'

"That a judgment entered against a party in a suit in which such party was joined by an attorney without authority to do so may be set aside, vacated, or enjoined, see the following authorities: Aldrich v. Kinney, 4 Conn. 380, 10 Am. Dec. 151; Sherrard v. Nevius, 2 Ind. 241, 52 Am. Dec. 508, and case note; Horton v. Howard, 79 Mich. 642, 44 N. W. 1112, 19 Am. St. Rep. 198; American Ins. Co. v. Oakley, 9 Paige (N. Y.) 496, 38 Am. Dec. 561, and case note; Keith v. Wilson, 6 Mo. 435, 35 Am. Dec. 443, and case note at page 448; Wiley v. Pratt, 23 Ind. 633; Shelton v. Tiffin, 6 How. 163, 12 L. Ed. 387; First Dec. Dig. Judgment, section 492."

In 6 C. J., p. 630, it is said:

"The contract of employment, as in other cases, consists of a mere offer or request by the client and an ac-

ceptance or assent by the attorney. An acceptance of the relation is always implied on the part of the attorney from his acting in behalf of his client in pursuance of a request by the latter. But there must be an actual contract or agreement, whether express or implied; the mere fact that one has acted as attorney for another does not. alone and of itself, create the relation, although it may afford a very strong presumption of it. In the case of a corporation the appointment of a solicitor need not be under the corporate seal, or specially authorized by resolution.

"*Retainer by Agent.* The retaining of an attorney may, like the making of any other contract, be done by an agent, and in such case the attorney is the attorney of the principal and not of the agent. But where one who is retained as an attorney, or who undertakes to perform an act which requires an attorney, himself engages an attorney to perform the act, the latter is but a subagent, and the relation of attorney and client does not subsist between him and the original employer.

"In order to constitute the relation a professional one and not merely one of principal and agent, the attorney must be employed either to give advice upon a legal point, to prosecute or defend an action in a court of justice, or to prepare and draft, in legal form, such papers as deeds, wills, contracts, and the like. Where suits are brought by an attorney without authority from plaintiff, the rule seems established that the bringing of suit does not bind the involuntary plaintiff. (Atkinson v. Howlett, 11 Ky. Law Rep. [abstract] 364; Hurste v. Hotaling. 20 Neb. 178, 29 N. W. 299.; Robson v. Eaton, 1 T. R. 62, 99 Reprint, 973; Scribner v. Parcells, 20 Ont. 554.) The usual practice is to have the suit dismissed on motion as soon as the attorney's lack of authority is established.

*"Proof of Authority—In General—Presumption of Authority.* Although it is necessary that an attorney be specially authorized to act for a client, yet in the absence of statutory requirement that the authority of an attorney shall be evidenced by writing, his position as an officer of the court makes it unnecessary for him, in the ordinary case, to show his authority in any way, there being a firmly established presumption in favor of an attorney's authority to act for any client whom he professes to represent, unless there has been fraud or imposition practiced, or unless the party has objected to the use of his name. In the absence of countervailing evidence or statutory provision, this presumption is conclusive; otherwise it is disputable, and the party for whom the attorney appeared may thereafter show that the attorney appeared without authority."

In 2 Ency. of Pleading and Practice, page 690, it is said:

*"Authorities Holding That a Judgment Resting on an Unauthorized Appearance is a Nullity*—The clear weight of authority, and the true rule of law on principle, is that a domestic judgment rendered against a person without any service of summons upon him and without any appearance by him, and only upon an appearance made by an unauthorized attorney, which appearance has never been ratified or confirmed, is absolutely void as to the person for whom the appearance was made."

A large number of authorities are cited under note 2 from a large number of states, as follows:

*"United States*—Shelton v. Tiffin, 6 How. (U. S.) 163 [12 L. Ed. 387].

*"Kansas*—Newton First Nat. Bank v. Grimes Dry Goods Co., 45 Kan. 510 [26 P. 56]; Reynolds v. Fleming, 30 Kan. 106 [1 P. 61, 46 Am. Rep. 86].

*"Illinois*—Anderson v. Hawhe, 115 Ill. 33 [3 N. E. 566]; Bonnell v. Holt, 89 Ill. 71; Welch v. Sykes, 8 Ill.

[3 Gilman] 197; Thompson v. Emmert, 15 Ill. 415; Lyon v. Boilvin, 7 Ill. [2 Gilman] 629; Leslie v. Fischer, 62 Ill. 118; Truett v. Wainright, 9 Ill. [4 Gilman] 420.

"*Ohio*—Abernathy v. Latimore, 19 Ohio, 286; Critchfield v. Porter, 3 Ohio, 519.

"*Iowa*—Harshey v. Blackmarr, 20 Iowa, 161 [89 Am. Dec. 520]; Rice v. Griffith, 9 Iowa, 539; Macomber v. Peck, 39 Iowa, 351; Baltzell v. Nosler, 1 Iowa, 588 [63 Am. Dec. 466]; Newcomb v. Dewey, 27 Iowa, 381; Potter v. Parsons, 14 Iowa, 286; Bryant v. Williams, 21 Iowa, 329; Bond v. Epley, 48 Iowa, 600; Hefferman v. Burt, 7 Iowa, 321 [71 Am. Dec. 445]; Russell v. Pottawottamie County, 29 Iowa, 256; De Louis v. Meek, 2 [G.] Greene (Iowa) 55; Powell v. Spaulding, 3 [G.] Greene (Iowa) 443.

"*Louisiana*—Decuir v. Lejeune, 15 La. Ann. 569; Legere v. Richard, 10 La. Ann. 669; Marvel v. Manouvrier, 14 La. Ann. 3 [74 Am. Dec. 424]; Ridge v. Alter, 14 La. Ann. 866; Walworth v. Henderson, 9 La. Ann. 339.

"*Colorado*—Great West Min. Co. v. Woodmas, 12 Colo. 46 [20 P. 771, 13 Am. St. Rep. 204].

"*New Jersey*—McKelway v. Jones, 17 N. J. Law, 345; Price v. Ward, 25 N. J. Law, 225.

"*Massachusetts*—Watson v. New England Bank, 4 Met. (Mass.) 343; Gleason v. Dodd, 4 Met. (Mass.) 333; Hall v. Williams, 6 Pick. (Mass.) 232.

"*Virginia*—Raub v. Otterback (1893), 89 Va. 645, 16 S. E. 933.

"*Pennsylvania*—Bryn Mawr Nat. Bank v. James, 152 Pa. 364 [25 A. 823].

"*District of Columbia*—Woods v. Dickinson, 7 Mackey (D. C.) 301.

"*Maine*—McNamara v. Carr, 84 Me. 299 [24 A. 856].

"*Texas*—Dodge v. Phelan, 2 Tex. Civ. App. 441 [21 S. W. 309]; Chapman v. Austin, 44 Tex. 133; Foote v. Sewall (1891), 18 Tex. 659, 17 S. W. 373.

"*Dakota*—Williams v. Neth (1886), 4 Dak. 360, 31 N. W. 630.

"*California*—Garrison v. McGowan, 48 Cal. 592; Merced County v. Hicks, 67 Cal. 108 [7 P. 179].

"*Kentucky*—Christy v. Garrity (Ky., 1893), 22 S. W. 158 [14 Ky. Law Rep. 910].

"*Nebraska*—Kepley v. Irwin, 14 Neb. 300 [15 N. W. 719]; Kirschbaum v. Scott, 35 Neb. 199 [52 N. W. 1112].

"*Indiana*—Sherrard v. Nevius, 2 Ind. 241 [52 Am. Dec. 508].

"*North Carolina*—Koonce v. Butler, 84 N. C. 222.

"*Missouri*—Napton v. Leaton, 71 Mo. 358.

"*English*—Bayley v. Buckland, 1 Exch. 1; Robson v. Eaton, 1 T. R. 62; Hubbart v. Phillips, 13 M. & W. 702.

"See Burton v. Sherman, 20 N. Y. Wkly. Dig. 419; Sheriff v. Smith, 47 How. Pr. (N. Y. Supreme Ct.) 470; Campbell v. Bristol, 19 Wend. (N. Y.) 101.

"The principal case supporting the text, and the one which in effect overturns the early English rule and Denton v. Noyes, 6 Johns (N. Y.) 296, is Shelton v. Tiffin, 6 How. (U. S.) 163 [12 L. Ed. 387], decided in 1848. The facts in the case were quite numerous, but on the point of an unauthorized appearance were as follows: Two citizens of Virginia, Moseby and Bouldin, sued, in the U. S. Circuit Court, for Louisiana, John M. Perry, a citizen of Louisiana, who was served, and also Lilburn P. Perry, his son a citizen of Missouri, who was not served. One Crawford, a regularly admitted attorney of the court, filed an answer for both Perrys, but was not authorized to do so by L. P. Perry. His filing an answer for Lilburn was by mere inadvertence, not through intentional fraud. The plaintiffs in that action, Moseby and Bouldin, were innocent of any fraud of collusion, and on a regular trial obtained judgment for seven thousand five hundred sixty dollars, on which execution issued and certain property of Lilburn P. Perry was seized

and sold to one Anderson. The court held that the judgment was a nullity as to Lilburn P. Perry, and did not authorize the seizure and sale of his property.''

In the case of Harshey v. Blackmarr, 20 Iowa at page 162, 89 Am. Dec. 520, the court, in a masterly opinion by Judge DILLON, reviewing the authorities and the reasons underlying them, held, as disclosed by the headnotes:

''Although an attorney cannot, without special authority, admit service of jurisdictional process upon his client, yet it will be presumed in all collateral proceedings, and perhaps on appeal or in error, that a regular attorney-at-law who appeared for a defendant, though not served, had authority to do so.

''2. . . . To enable a party who has been represented by an unauthorized attorney to be relieved he must negative the presumption of authority in the attorney; and ordinarily this must be done by motion or bill in equity.

''3. . . . The rule is well settled that in an action on a judgment the defendant may show that the attorney who entered an appearance for him was not authorized to do so. It has been held otherwise as to domestic judgments, but the soundness of the ruling is doubted.

''4. But it is certain that a party is entitled to relief when an unjust judgment, either foreign or domestic, has been rendered against him by fraud or collusion, or by the appearance of an unauthorized attorney, if he seeks the relief by bill or motion promptly, and has been guilty of no laches.''

At page 174 of the Iowa Report, Judge DILLON takes up the history and reviews the cases upon the subject in a very able and convincing manner. From this lengthly opinion the Encyclopædia of Pleading and Practice, supra, quotes the following:

''The rule (taking the above loose report to mean what the case is generally cited to prove), has, we submit, no

foundation in reason to stand upon. It obliges a person to be bound by the unauthorized act of a mere stranger. It binds him by a judgment of a court without a day in court. It relieves the other party of a duty which, in reason, belongs to him, viz., *to serve his process and to see, at his peril, that his adversary is in court.* And it carries out this unsoundness by compelling the *wrong party* to look to the attorney. True reason and logic would say, if an attorney appeared for me without my knowledge or authority, express or implied, I should not be bound by the act if never ratified or promptly disavowed, and if the adverse party, being ignorant of the want of authority, and carelessly omitting to serve process or to require the attorney to show his authority, has been damaged, he and not myself should be the one to look to the attorney.''

In Osborn et al. v. Bank of the United States, 9 Wheat. 738, 6 L. Ed. 204, the United States supreme court had occasion to deal with the question of the authority of an attorney to appear on behalf of a corporation. At page 226 of the Law Edition, 829, and 830 of 9 Wheaton, the court said:

''It is admitted, that a corporation can only appear by attorney, and it is also admitted, that the attorney must receive the authority of the corporation, to enable him to represent it. It is not admitted, that this authority must be under seal. On the contrary, the principle decided in the cases of the Bank of Columbia v. Patterson [7 Cranch, 299, 3 L. Ed. 351], is supposed to apply to this case, and to show that the seal may be dispensed with. It is, however, unnecessary to pursue this inquiry, since the real question is, whether the non-appearance of the power in the record be error not whether the power was insufficient in itself.

''Natural persons may appear in court, either by themselves, or by their attorney. But no man has a right to

appear as the attorney of another, without the authority of that other. In ordinary cases, the authority must be produced, because there is, in the nature of things, prima-facie evidence that one man is in fact the attorney of another. The case of an attorney-at-law, an attorney for the purpose of representing another in court, and prosecuting or defending a suit in his name, is somewhat different. The power must indeed exist, but its production has not been considered as indispensable.''

See, also, Robb v. Vos, 155 U. S. 13, 15 S. Ct. 4, 39 L. Ed. 52; 34 C. J. 449.; 33 C. J. 1096; Thornton on Attorneys, section 243; Hill v. Mendenhall, 21 Wall. 453, 22 L. Ed. 616; 2 Stand. Ency. Practice and Pleadings, 559; 3 Freeman on Judgments, sections 1250 and 1251.

We think this elemental that the attorney must be employed by the client. When the relation exists, then the attorney, for the purposes of his employment and in the scope of his duty, is the alter ego of the client, or the person represented. The decisions relied upon to authorize the appearance of this attorney so as to bind the appellant seem to have been decided without having its attention directed to the principle of due process of law, and without discussing that principle. It appears to have been the practice in England before the Revolution to require attorneys to exhibit in court their authority to represent their clients; and, this being true, the English courts held that, where an attorney appeared for a person, the court had necessarily passed upon his right to so appear at the time, or before the rendition of the judgment, and it did not thereafter, in an attack on the judgment, inquire into the attorney's authority, especially if he was sworn. The practice in this state has never been, so far as we are advised, to require the attorney to produce his authority, unless it was challenged in an appropriate manner. In other words, the attorney is presumed to have authority to represent his client, or

to represent the party for whom he appears, and the court will make no inquiry into it until his power to do so is challenged in an appropriate manner. The English rule is not, therefore, applicable here, because here the court makes no inquiry as to whether the appearance is authorized or not.

It is difficult to say how, in the absence of the party whom the attorney undertakes to represent without authority, the court could make a binding determination of the attorney's power without giving such party an opportunity to be heard thereon. These decisions were decided prior to the adoption of the Fourteenth Amendment to the Constitution of the United States prohibiting the states from depriving a person of life, liberty, or property without due process of law. To permit a judgment taken without authority of an attorney to represent the person and make it become final and conclusive on such person seems to be thoroughly repugnant to all principles of due process of law, and it would be clearly a taking of property without due process of law, in that the party had no opportunity or notice to appear and be heard before the judgment was finally rendered against him. These cases have been reviewed in detail before us, and, in so far as they hold that the judgment rendered against a person by means of appearance of an unauthorized attorney, who had never been employed by the client for any purpose, are unsound and will not be followed henceforth. If the practice were permitted to make the judgment conclusive instead of making it merely presumptively correct, it would lie within the power of unscrupulous persons to deprive solvent persons, or corporations, of their property without due process of law or without remedy. In other words, it would enable an unauthorized attorney to perpetrate a great wrong upon a person who had never employed him or had never had any relation with him as attorney and client.

There is no dispute in the record as to the fact that the attorney was not employed, unless it was by Donnell, who had no kind of authority to employ attorneys. Before an attorney enters an appearance for a person, he should be cautious, if his employment is through a third party, to see that such party has authority to make the employment, and in such case he should promptly communicate the fact of employment to the client. We therefore are of the opinion that the unauthorized appearance of an attorney in the garnishment proceeding had no efficacy to bind the appellant in this case.

It is next necessary to consider whether or not Donnell was an agent of the appellant upon whom process could be served in garnishment proceedings. Conceding, for the purpose of the setting up of this point, that Donnell had been and was authorized to represent appellant in a transaction that admitted doing business in Mississippi (as to which we are not expressing an opinion here), was he a person upon whom a process could be served? It must be remembered that the judgment upon which the garnishment was founded was against him, and that the effect of the garnishment, if sustained, would operate to procure some other person to pay his debt. Therefore Donnell was adversely interested to his principals, Hirsch Bros. & Co., conceeding him to be an agent of them for general purposes, and we think it would be improper to hold that he was an agent upon whom the garnishment process could be served. The general principle is that, where the agent is interested hostilely to the principal, communication or notice to the agent of facts are not notice to his principal. This has been held in a number of cases in this state. See Cooper v. Robertson Investment Company, 117 Miss. 108, 77 So. 953; Bank v. Leeton, 131 Miss. 324, 95 So. 445; Scott County Milling Company v. Powers, 112 Miss. 798, 73 So. 792. In the last syllabus to the case last mentioned

it is said that, where an agent is interested adversely to his principal, his principal is not charged with knowledge of the agent's transactions. Applying the principle to the fact before us, we think it must be said that Donnell was an interested person, and, as R. E. Kennington Company had procured a judgment against him, they necessarily knew he was an interested person, and it was improper to serve the process upon him.

In Wuchter v. Pizzutti, 276 U. S. 13, 48 S. Ct. 259, 72 L. Ed. 446, 57 A. L. R. 1230, the supreme court of the United States had before it a case of the sufficiency of a statute making the secretary of state of the state of New Jersey an agent upon whom process could be served against any person using the highways of that state in case of injury to persons and property by using the highway. The statute involved did not require the secretary of state to communicate the notice served upon him to the person who was defendant in the suit. In the beginning of the opinion Chief Justice TAFT said:

"This case involves the validity, under the Fourteenth Amendment, of a statute of New Jersey providing for service of process on nonresidents of the state in suits for injury by the negligent operation of automobiles on its highways.

"Pizzutti was driving a team of horses attached to a wagon on a public highway in New Jersey. Wuchter was a resident of Pennsylvania who was following the wagon with his automobile. Wuchter drove his car so as to crash into the rear of the wagon, damaging it, and injuring Pizzutti and his horses. Pizzutti instituted a suit against Wuchter in the supreme court of New Jersey. Wuchter was served with process under the provisions of the act known as chapter 232 of the Laws of 1924 (P. L. 1924, p. 517), by leaving process with the secretary of the state. Wuchter interposed no defense. A judgment interlocutory was taken against him and a

writ of inquiry of damages was issued. Although the statute did not require it, notice of its proposed execution was actually served personally on Wuchter in Pennsylvania. Wuchter did not appear. A final judgment was entered. Wuchter then appealed to the supreme court, contending that the act under which the process was served upon him was unconstitutional, because it deprived him of his property without due process of law, in contravention of section 1 of the Fourteenth Amendment to the Federal Constitution.''

At page 449 of the Law Edition report, page 18 of 276 U. S., 48 S. Ct. 259, 260, 57 A. L. R. 1230, the court said:

''The question made in the present case is whether a statute, making the secretary of state the person to receive the process, must, in order to be valid, contain a provision making it reasonably probable that notice of the service on the secretary will be communicated to the nonresident defendant who is sued. Chapter 232 of the Laws of 1924, makes no such requirement and we have not been shown any provision in any applicable law of the state of New Jersey requiring such communication. We think that a law with the effect of this one should make a reasonable provision for such probable communication. We quite agree, and, indeed, have so held in the Pawloski case, that the act of a nonresident in using the highways of another state may be properly declared to be an agreement to accept service of summons in a suit growing out of the use of the highway by the owner of the automobile, but the enforced acceptance of the service of process on a state officer by the defendant would not be fair or due process unless such officer or the plaintiff is required to mail the notice to the defendant, or to advise him, by some written communication, so as to make it reasonably probable that he will receive actual notice. Otherwise, where the service of summons

is limited to a service of the secretary of state or some officer of the state, without more, it will be entirely possible for a person injured to sue any nonresident he chooses, and through service upon the state official obtain a default judgment against a nonresident who has never been in the state, who had nothing to do with the accident, or whose automobile having been in the state has never injured anybody. A provision of law for service that leaves open such a clear opportunity for the commission of fraud (Heinemann v. Pier, 110 Wis. 185, 85 N. W. 646) or injustice is not a reasonable provision, and in the case supposed would certainly be depriving a defendant of his property without due process of law.''

It appears, therefore, to us that it was improbable that Donnell would communicate the fact of service made upon him to Hirsch Bros. & Co., and it appears that he, in fact, did not do so. We are therefore of the opinion that there was not such service of process as warranted the rendition of the judgment against Hirsch Bros. & Co. in the garnishment proceeding.

It is urged, by instituting an injunction, errors in obtaining the judgment were waived under the provisions of section 389 of Hemingway's Code of 1927, which provides:

''When an injunction shall be granted to stay the execution of a judgment at law, in whole or in part, the issuance of such injunction shall operate as a release of all errors in the judgment.''

We think this section has only the effect of releasing such errors as could be availed of only on appeal to the supreme court. It does not have the effect of dispensing with jurisdictional requirements, and, where a judgment is entirely void, it does not give validity to the judgment. We are therefore of the opinion that the court erred in dismissing the bill for injunction and in

dissolving the injunction and awarding damages, and the judgment will be reversed, and judgment rendered here making the injunction perpetual.

Reversed and judgment here.