586 So.2d 775 (1991)
Charlena WIRTZ, as Executrix of the Estate of Lena Watson Whitley, Charlena Wirtz, Lynn Wirtz, Elizabeth Wirtz, Andrew Wirtz and Clay Wirtz
v.
Dennis R. SWITZER and Dennis R. Switzer, CPA, Ltd.
No. 07-CA-59508.
Supreme Court of Mississippi.
September 4, 1991.
Rehearing Denied October 23, 1991.
*777 Edwin E. Kerstine, Pitts & Kerstine, for appellant.
Richard D. Gamblin, Edward C. Cohen, Wise Carter Child & Caraway, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
On June 18, 1985, Charlena Wirtz, as Executrix of the Estate of Lena Watson Whitley, and Charlena Wirtz, Lynn Wirtz, Elizabeth Wirtz, Andrew Wirtz, and Clay Wirtz, as residuary beneficiaries under the will of Lena Whitley, filed a Complaint in the Adams County Circuit Court against Dennis Switzer and Dennis Switzer, CPA, Ltd. The plaintiffs alleged that Switzer, in performing professional accounting services for the Estate, failed to exercise that degree of care, skill, and diligence required of other certified public accountants. Specifically, the plaintiffs alleged that the defendants were negligent in failing to timely file a fiduciary return for the Estate and in omitting the 1982 windfall profit taxes on a schedule prepared for use by the Estate. As a direct and proximate result of the defendants' negligence, the plaintiffs suffered damages. The plaintiffs asked for punitive as well as compensatory damages.
The trial in the matter was conducted on November 4 and 5, 1987. At the close of the plaintiff's case, the defendant moved for a directed verdict on the issue of punitive damages and on all claims dealing with the alleged negligent preparation of the schedule. The court granted the directed verdict as to both issues. The trial proceeded *778 on the claim of negligence in filing the fiduciary return.
When the defendant rested, the plaintiffs moved for a directed verdict on the issue of Switzer's liability for allegedly failing to file the fiduciary return in a timely manner. The court granted the directed verdict in the amount of $4,173.40. The court denied the plaintiffs' request for prejudgment interest. These rulings were incorporated into the court's final judgment of November 13, 1987. The plaintiffs have appealed.

FACTS
Lena Watson Whitley died on November 28, 1981. She left a Last Will and Testament in which, among other bequests, she left all rights, titles and interests in certain oil and gas-producing property in Louisiana to Sarah Arnold Campbell, Robin Ward, Nannette Cape, and Elaine Grow (referred to as `the heirs'), and named Lynn Wirtz, Charlena Wirtz and their three children as residuary beneficiaries after all debts and bequests had been paid. Charlena Wirtz was named as the Executrix.
The Executrix filed a Petition to Probate in the Adams County Chancery Court on January 4, 1982. In September of 1983, the heirs began petitioning the court to order that distribution be made of the income from the oil-producing property in Louisiana which had been left to them by Lena Whitley. The Executrix's response to the heirs' Petitions was that a final accounting could not be made until the tax returns for the Estate were filed and the IRS formally closed the Estate. The dispute culminated in the Executrix threatening to ask the court to interpret the provision of the will bequeathing the Louisiana property to the heirs and the heirs threatening to contest the will because of the circumstances under which it was executed.
As a result of the dispute, the parties entered into an Act of Compromise, Settlement, Conveyance, and Release. By the terms of the Act, all of the Louisiana property, with the exception of thirty-five acres which had been bequeathed to someone else, would be placed in the possession of the heirs. The heirs agreed to release any claims against the Estate, the Executrix, and the residuary beneficiaries. The Executrix agreed to pay to the heirs all sums received which were attributable to the property.
Incorporated into the Act was a schedule prepared by Dennis Switzer who had been engaged by the Executrix as the accountant for the Estate. The schedule was an accounting of the net oil income, along with the taxes due on the income. The tax liability reflected on the schedule, which included an estimate for windfall profit taxes, was to be withheld by the Executrix when she made the distribution. The schedule reflected the oil income through October 31, 1983. The interest earned by the oil income was not reflected on the schedule and the parties agreed that each side would receive one-half of the interest, or $4,500.00. After deductions for the various taxes, the net oil income reflected by the schedule to be distributed to the heirs was $96,456.00 (although the heirs would actually receive $100,956.00 with the inclusion of the $4,500.00 in interest).
A few days later, the Estate's attorney told the Executrix that she needed to retain an additional $30,000.00 from the money to be paid to the heirs because Switzer had called and said that the 1982 windfall profit taxes had not been included on the schedule. Switzer told the attorney that he did not know the exact figure of those taxes, but he estimated that the amount would be approximately $30,000.00. The Executrix wrote a check in the amount of $70,000.00 and sent it to the attorney of the heirs with an explanation of why the extra $30,000.00 had been withheld.
The heirs filed a Complaint disputing the amount. The court found that the Act entered into by the parties was a binding contract and that the schedule incorporated therein required the Executrix to pay $96,456.00 to the heirs.
The parties continued to negotiate because the heirs wanted the Executrix to pay an additional $30,000.00 for the 1982 windfall profit taxes which had been omitted. Eventually, the parties agreed and *779 the court entered orders to reflect the agreement. In the first, the court found that the rights to the property vested in the heirs as of the date of Lena Whitley's death and that the Executrix and the Estate were not entitled to receive any part of or any control over the interest or income from the property. The Executrix was ordered to pay to the heirs the sums she had interpled for the 1982 windfall tax liability. In the second order, the court required the Executrix to place the sum of $15,000.00 in an interest-bearing account. That money was to remain in escrow until a determination could be made as to whether or not any 1982 windfall profit taxes were owed. If any of the money remained after paying taxes, it and the interest earned on the money was to be paid to the heirs. The Executrix was awarded a lien on any future production in the event she was required to pay any additional windfall profit taxes. For any future taxes, the heirs were responsible.
On April 7, 1987, the heirs asked that the $15,000.00 which had been placed in escrow be paid to them. The Executrix asked that the funds remain in escrow since there had as yet been no determination of tax liability. The court ordered that the $15,000.00 plus interest be paid to the heirs.

LAW

I. DID THE TRIAL COURT ERR IN GRANTING APPELLEES' MOTION FOR A DIRECTED VERDICT ON APPELLANTS' CLAIM THAT DAMAGES WERE SUFFERED DUE TO PAYMENT OF A CERTAIN $15,000 TO THE HEIRS BY THE ESTATE?
At the close of the plaintiff's case, the defendant moved for and the court granted a directed verdict on the claim of the negligent preparation of the schedule. Where a motion for a directed verdict is made and granted at the close of the plaintiff's case-in-chief, the trial court should look "solely to the testimony on behalf of the opposing party; if such testimony, along with all reasonable inferences which can be drawn therefrom, could support a verdict for that party, the case should not be taken from the jury." Biloxi Regional Medical Center v. David, 555 So.2d 53, 57 (Miss. 1989) [quoting Hall v. Mississippi Chemical Express, Inc., 528 So.2d 796, 798 (Miss. 1988)]. The motion should be denied unless the plaintiff's evidence is so lacking that reasonable jurors would be unable to reach a verdict in favor of that party. Wilner v. Mississippi Export Railroad Co., 546 So.2d 678, 681 (Miss. 1989). On review, we must consider the evidence in that same light. Guerdon Industries, Inc. v. Gentry, 531 So.2d 1202, 1205 (Miss. 1988).
An accountant may be liable for negligence.
It is implied in all contracts for the employment of public accountants that their services are to be furnished with reasonable care and in good faith without fraud or collusion, and that standard accounting practices will be followed, and that, where different theories as to proper practices are involved they will follow the one they deem fairly applicable to the situation presented. While not an insurer against damage to his client, in the exercise of his professional capacity, it is generally recognized that a public accountant may be held liable on principles of negligence, to one with whom he is in privity or with whom he had a direct contractual relation, for damages which naturally and proximately result from his failure to employ the degree of knowledge, skill, and judgment usually possessed by members of that profession in the particular locality.
1 Am.Jur.2d Accountants § 15 (1962).
In an attorney malpractice case, the existence of certain factors must be proven by a preponderance of the evidence. Those are equally applicable to an accountant malpractice case. The factors are:
1. Existence of a lawyer-client relationship[;]
2. Negligence on the part of the lawyer in handling his client's affairs entrusted to him; and
3. Proximate cause of injury.
*780 Hickox by and through Hickox v. Holleman, 502 So.2d 626, 633 (Miss. 1987). Expert testimony is required "to support an action for malpractice of a professional man in those situations where special skills, knowledge, experience, learning or the like are required." Hickox, 502 So.2d at 635 [quoting Dean v. Conn, 419 So.2d 148, 150 (Miss. 1982)].
Each factor must be evaluated in terms of whether the plaintiffs' evidence could support a verdict for the plaintiffs.

A. ACCOUNTANT-CLIENT RELATIONSHIP
Charlena Wirtz, in her capacity as Executrix of the Estate of Lena Whitley, engaged Dennis Switzer as an accountant for the Estate. She was familiar with Switzer because Mrs. Whitley had used his firm in her business affairs. Switzer agreed to perform the tax work for the Estate.
Switzer completed the estate tax returns in October of 1982. At that time, he talked to Charlena about the fiduciary return which he was going to file at a later date. In addition to this work, Switzer attended a hearing held on November 10th between the heirs and the Executrix. As a result of the hearing, Switzer prepared a schedule which was used to determine the oil income and the tax liabilities on the income.
The evidence presented by the plaintiffs as to the existence of an accountant-client relationship between Switzer and the Estate was more than adequate to withstand a directed verdict. If the jury believes that such a relationship exists, Switzer will be liable for any loss suffered by reasonably foreseeable users if the loss was proximately caused by his negligence. See Touche Ross & Co. v. Commercial Union Ins. Co., 514 So.2d 315 (Miss. 1987). Reasonably foreseeable users in this case would include the residuary beneficiaries.

B. NEGLIGENCE
The alleged negligence occurred when Switzer prepared a schedule which was incorporated into an agreement between the heirs, the Executrix, and the residuary beneficiaries. The schedule included a figure of $22,937.00 as the windfall profit tax liability. The Executrix believed that this figure was correct, and she indicated that Switzer never told her that it was an estimate. After the agreement had been executed, Switzer informed the Estate's attorney that the 1982 windfall profit taxes were not included in the figures on the schedule and that the 1982 taxes would be approximately $30,000.00.
To support the claim of negligence, Wayne Galloway, a certified public accountant, testified as an expert. His testimony was intended to show that Switzer's mistake in omitting the 1982 taxes fell below the standard of care required of accountants. To make that determination, Galloway studied Switzer's depositions, the remittance advices that were received from Ashland Oil Company, the estate and fiduciary tax returns, correspondence, and the Wirtzs' depositions.
When asked about his opinion as to whether omitting the 1982 taxes was a failure to use reasonable accounting care, Galloway said that it was where the amount was material. Galloway also said that his review of the documents showed that Switzer had the remittance advices in his possession and that they clearly showed that there was a substantial oil royalty income and "in my opinion there was enough information on there to conclude that there was a high probability that there was a large windfall profit tax liability." He said that he believed the mistake was an error rather than an estimate that was off.
In regard to this second factor, the Hickox Court said that the duty owed to the client is that of exercising "the knowledge, skill, and ability ordinarily possessed and exercised by the members of the ... profession similarly situated." Hickox, 502 So.2d at 634. Compare Harris v. Shields, 568 So.2d 269, 273 (Miss. 1990) (A dentist "has to each patient a non-delegable duty of care consistent with the level of expertise the [dentist] holds himself out as possessing and with the circumstances of the case").
*781 Proof that the professional did not exercise that knowledge, skill, or ability must come from expert testimony. If believed, Galloway's testimony would establish that Switzer had before him enough information at the time he prepared the schedule to alert him that the windfall profit tax liability for 1982 would be substantial. The failure to omit the tax liability in that case would be negligence. The evidence as to the second factor was sufficient to withstand a directed verdict.

C. PROXIMATE CAUSE OF INJURY
In considering this factor, there are two questions which must be addressed. First, did Switzer's mistake in omitting the windfall profit taxes proximately cause an injury, and secondly, did the Estate actually suffer an injury?
The first agreement entered into by the parties would have allowed Charlena to pay to the heirs the sum of $100,956.00. This sum is derived from the figures in the schedule prepared by Switzer (net oil income, reflecting gross production minus severance, windfall profit, and fiduciary income taxes, through October 31, 1983 in the amount of $152,776.00 minus federal and Louisiana estate taxes of $56,320.00 plus $4,500.00 in interest which was not reflected on the schedule). The Executrix was authorized to withhold only the tax liability reflected on the schedule.
Even though Switzer omitted the 1982 windfall profit taxes from the schedule, the Executrix was held to the terms of the agreement into which the schedule with the omission was incorporated by reference. She was required to pay to the heirs the amount of income reflected on the schedule and an extra $15,000.00 for possible liability of the 1982 windfall profit taxes. In other words, the evidence presented by the plaintiffs was sufficient to show that the extra $15,000.00 that the Estate was required to pay was a direct and proximate result of Switzer's omission. And while the Estate would have suffered no loss if the money had been paid back into the Estate, that sum was eventually paid to the heirs.
The judge gave no reason for granting the directed verdict. However, the questions he asked throughout the trial indicated that he had problems with the alleged loss of $15,000.00 in that there had been no payment of 1982 windfall profit taxes as of the date of the trial and that by law, taxes are supposed to be paid out of the residuary estate.
It is true that the law of this State is that "in the absence of a contrary provision in a will, resort must first be had to the personal property in the payment of debts and expenses of the estate including federal estate taxes, before resort may be had to real property." Estate of Torian v. First National Bank of Memphis, 321 So.2d 287, 292 (Miss. 1975). However, by the terms of the first agreement between the heirs and the Estate, the Executrix, and the residuary beneficiaries, the windfall profit taxes were to be withheld from the oil income. An agreement such as this is binding if it is supported by consideration. "Forebearance to sue or institute some other legal proceeding can constitute consideration." Daniel v. Snowdoun Association, 513 So.2d 946, 949 (Miss. 1987). Here, there was consideration since each side gave up an opportunity to institute legal proceedings against the other with regard to the will.
The evidence of the plaintiffs could support a verdict for the plaintiffs in the amount of $15,000.00. Reasonable jurors could have believed that the $15,000.00 charged to the Estate was a direct and proximate result of negligence by Switzer.

D. CONCLUSION
The testimony of the plaintiffs' witnesses was sufficient to withstand a motion for a directed verdict on the issue of Switzer's alleged negligence in the preparation of the schedule. It cannot be said that the plaintiffs' evidence was so lacking as to any of the factors which the plaintiffs were required to prove that reasonable jurors would be unable to reach a verdict in favor of the plaintiffs. The court erred in directing a verdict on this issue.

*782 II. DID THE TRIAL COURT ERR IN GRANTING DEFENSE MOTION FOR A DIRECTED VERDICT ON APPELLANTS' CLAIM FOR DAMAGES OWED ON A CERTAIN $2,500 IN ATTORNEY'S FEES?
We have allowed a party to recover attorney's fees as an element of damages depending on the situation.
That a party may not be able to get his attorney's fees paid as part of the costs does not mean that attorney's fees are not a proper element of damages in an appropriate case. Where a grantee in a warranty deed was required to employ an attorney to perfect his title, payment of grantee's attorney's fees was part of the damages in a subsequent suit against the grantor for breach of warranty. Howard v. Clanton, 481 So.2d 272 (Miss. 1986). Similarly, where an insured is compelled to defend himself in an action because his insurer breached its contract in denying its obligation to defend him under its liability policy, the attorney's fees incurred in the defense of that action may be awarded the insured as contract damages in a subsequent action against the insurer. Rent-A-Scooter, Inc. v. Universal Underwriters Ins. Co., 285 Minn. 264, 173 N.W.2d 9 (1969).
Grisham v. Hinton, 490 So.2d 1201, 1206 (Miss. 1986).
The appellants contend that the court erred in refusing to allow the Estate's attorney to testify as to the attorney's fees which he incurred and which were charged to the Estate as a result of Switzer's alleged negligence. The court sustained an objection to this testimony as being speculative. The plaintiffs made a proffer that the attorney would have testified that additional attorney's fees in the amount of $2,500.00 were charged to the Estate because of Switzer's alleged negligence.
This is one of those cases where attorney's fees could properly be an element of damages. If the attorney's fees were incurred as a result of the alleged negligence of Switzer, they could be considered as damages. The appellants should have been allowed to offer testimony on those attorney's fees as a part of the damages they were claiming.

III. DID THE JUDGE ERR BY INTERJECTING HIMSELF INTO THE TRIAL?
We have said that "in order to obtain a review of the question of propriety of remarks or conduct of the trial judge during a trial, the remarks must be especially called to the attention of the trial judge when made, and a correction requested or a proper objection made at the time." Tippit v. Hunter, 205 So.2d 267, 271 (Miss. 1967). However, a limitation on this rule occurs when "the conduct of the trial judge, on the entire record, was so reprehensible and prejudicial as to deny a fair trial or due process of law." Jackson Yellow Cab Co. v. Alexander, 246 Miss. 268, 277, 148 So.2d 674, 678 (1963). In Nichols v. Munn, 565 So.2d 1132 (Miss. 1990), we said that an attorney is not held to the same degree of diligence in making an objection to a judge's comments that he is in making other objections, since a judge interjects himself into a trial by his own volition.
The appellants contend that the judge improperly interjected himself into the trial. First, the judge allegedly asked for a full accounting of all oil income and disbursals by the Estate when that was not even at issue. Secondly, the judge improperly indicated a disbelief that Switzer's omission of tax liability from the schedule he prepared could have caused damage to the appellants.
The appellants' contention is based on comments made by the judge during the trial. The judge interrupted the proceedings at various times with comments and questions such as: "If you turned over all the oil money that you received, ... [w]hat difference did it make that the accountant had miscalculated the windfall tax"; "Put the figures down, ... and then let's see if she actually got into her account, and if she got into her account why, whether it was because the accountant had made a mistake on the windfall profit or whether she was paying some money just to make some settlements to compromise other parts of a will contest"; *783 "The simple question that I'm asking you is where is the loss ... that caused the residuary of the estate any money in filing a return to the Internal Revenue Service for windfall profit tax if they turned over the money, whether it was accurately estimated by the accountant or inaccurately estimated, whatever that figure was, whether it was twenty-two thousand or eighty thousand, it went to the owners of the property: where is the loss to the estate"; and "The records show that it ultimately was all turned over to the recipients who were the heirs to that oil property. So what difference does it make if the accountant made an error? Where is the damages on that point since all of it was turned over?"
As we have noted previously,
We have recognized the danger that a trial judge generates by indicating or showing his attention to certain matters in the trial which may communicate to the jury the impression that such evidence or testimony is important or unimportant, and the very position of a judge during trial makes each comment unusually susceptible of influencing a juror or the jury. Shelton v. Puckett, 483 So.2d 354 (Miss. 1986); Hannah v. State, 336 So.2d 1317 (Miss. 1976); Thompson v. State, supra [468 So.2d 852 (Miss. 1985)]; Stubbs v. State, 441 So.2d 1386 (Miss. 1983); Fulgham v. State, 386 So.2d 1099 (Miss. 1980); Myers v. State, 99 Miss. 263, 54 So. 849 (1911).
West v. State, 519 So.2d 418, 423 (Miss. 1988). A trial judge should not in any way "inadvertently communicate to the jury his opinion regarding the value or credibility of the testimony being offered." Shelton v. Puckett, 483 So.2d 354, 357 (Miss. 1986).
Here, the judge obviously asked for the information and continued to question the witnesses in an attempt to understand the basis of the claim and to determine whether the Estate had in fact suffered a loss. However, his repeated questions could have indeed created doubt in the minds of the jurors that the Estate had suffered any loss. Since the judge directed a verdict on all issues and the case was not submitted to the jury, the error is harmless. But, we caution the judge on remand to refrain from interjecting himself in the trial in this manner.

IV. DID THE TRIAL COURT ERR IN GRANTING DEFENSE MOTION FOR A DIRECTED VERDICT ON PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES?
Punitive damages are awarded in order to serve as an example to others and should only be awarded in extreme cases. Central Bank of Mississippi v. Butler, 517 So.2d 507, 512 (Miss. 1987). "In order to warrant the recovery of punitive damages, there must enter into the injuries some element of aggression or some coloring of insult, malice, or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." South Central Bell v. Epps, 509 So.2d 886, 892-893 (Miss. 1987) [quoting Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 150-51, 141 So.2d 226, 233 (1962)].
The award of punitive damages, along with the amount of such, are within the discretion of the trier of fact. Fought v. Morris, 543 So.2d 167, 173 (Miss. 1989). The trial court, in determining if the issue should be submitted to the jury, must "decide whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could have found either malice or gross neglect/reckless disregard." (Citations omitted). Colonial Mortgage Co., Inc. v. Lee, 525 So.2d 804, 808 (Miss. 1988).
The basis of the appellants' contention that punitive damages are proper in this case is that Switzer committed a number of large monetary errors, that he failed to follow generally accepted accounting procedures, and that he refused to accept responsibility for the results of his errors. We cannot say, however, that the court abused its discretion in granting a directed verdict on the issue of punitive damages. When Switzer discovered the omission, he informed the Estate attorney of that fact. Even though the record does not include an explanation by Switzer for the omission, the evidence presented by the appellants *784 does not show that the alleged negligence evinced a ruthless disregard for the rights of others so as to justify punitive damages.

V. DID THE TRIAL COURT ERR IN DENYING PLAINTIFF WIRTZ THE RIGHT TO TESTIFY AS TO HER BASIS FOR CLAIMING MENTAL ANGUISH?
Sears, Roebuck & Co. v. Devers, 405 So.2d 898 (Miss. 1981), sets forth the criteria for the imposition of damages for mental distress.
Where there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally  or even unintentionally yet the results being reasonably foreseeable  Courts can in certain circumstances comfortably assess damages for mental and emotional stress, even though there has been no physical injury. In such instances, it is the nature of the act itself  as opposed to the seriousness of the consequences  which gives impetus to legal redress ...
Also, in a case of simple, or ordinary `garden variety negligence,' even in the absence of physical injury accompanying the negligent conduct, if there is a resulting physical illness or assault upon the mind, personality or nervous system of the plaintiff which is medically cognizable and which requires or necessitates treatment by the medical profession, this Court has followed the modern tendency and held a legal cause of action exists. This assumes, of course, the test of reasonable foreseeability is also satisfactorily met.
Devers, 405 So.2d at 902. See also Singleton v. Stegall, 580 So.2d 1242 (Miss. 1991) (a plaintiff in a legal malpractice action may recover only those damages for emotional distress which are fairly separable from those which flow from his encounter with the law).
Charlena Wirtz attempted to testify as to the mental anguish which she suffered as a result of Switzer's alleged negligence. The defendant objected to the testimony on the basis that mental anguish was not a proper subject for recovery of damages since Charlena was suing in her capacity as Executrix. The court sustained the objection.
Under Devers, if the results of the alleged conduct of the defendant were reasonably foreseeable, then damages for mental distress may be proper when that conduct evokes outrage or revulsion. Here, the reasonable foreseeability test is met. It was reasonably foreseeable that Switzer's mistake might harm Charlena in her capacity as Executrix. Although it cannot be said that Switzer's conduct evoked outrage or revulsion, in a case of even simple negligence, if there is a resulting physical illness which requires medical treatment, damages for mental distress are proper. Here, the court cut off Charlena's testimony on this issue so there is no way of knowing whether she required medical treatment. Therefore, the court erred in cutting off her testimony.
However, a party who wishes to preserve an issue for appeal must make a proffer. "Generally, when a party seeks to offer evidence which in turn is excluded by the trial court, before we will consider the matter on appeal the party must have somehow placed in the record the nature and substance of the proffered evidence for our consideration." Harris v. Buxton T.V., Inc., 460 So.2d 828, 833 (Miss. 1984). The appellants made no proffer on the issue of mental distress. Although the court erred in disallowing the testimony, the issue was not properly preserved for appeal.

VI. DID THE TRIAL COURT ERR IN DENYING PLAINTIFFS' RIGHT TO MOVE FOR AN AWARD OF PART OF A CERTAIN $1159.70 INTEREST PAYMENT MADE TO THE IRS AS DAMAGES, AND IN DENYING THE PLAINTIFFS' MOTION FOR AN AWARD OF PREJUDGMENT INTEREST ON THE $4,173.40 DAMAGES AWARDED AT TRIAL?
Because Switzer filed the Estate's fiduciary tax return late, the IRS charged a penalty and interest for four months, in the amount of $5,530.00. Switzer wrote a letter to the IRS recalculating the penalty and interest for three months since the check *785 had been received by the IRS before the fourth month started. Switzer's calculations showed that the penalty at 5% was $4,373.40 and the interest at 16% was $1,159.70. Because of an overpayment which had been made to the IRS earlier, the Executrix sent a check to the IRS for only $3,870.00.
During the trial, Charlena testified that she received a notice from the IRS that the Estate owed $5,530.00, $4,400.00 in penalty and $1,130.00 in interest. The defendant objected to the testimony because the plaintiffs' Complaint asked for only $3,870.00 in damages. The plaintiffs offered to amend the complaint.
When Switzer testified, he was asked about the interest that the $29,156.00 used to pay the late taxes was earning during those three months. Switzer said he calculated that the money earned $590.00 in interest.
The judge, in granting a directed verdict on the issue of the late filing of the fiduciary return, told the two attorneys to come up with a figure on the penalty. The plaintiffs said they would amend the complaint to show that the full penalty was $4,373.40, as reflected by the proof, rather than the $3,870.00 they had asked for in the Complaint. The judge said it was too late to amend. However, the defendant agreed to let that amount be the one that was used by the court in determining liability. The court refused to include the interest which had been charged by the IRS because the Estate earned interest on the money during the three months. The appellants contend that the interest of $590.00 earned on the money should have been deducted from the interest of $1,159.70 charged by the IRS, and the resulting sum of $569.70 should have been included in the award.
Whether to allow prejudgment interest is within the discretion of the court. LaBarre v. Gold, 520 So.2d 1327, 1331 (Miss. 1987). "Under Mississippi law, one is entitled to interest from the date that money is due if the amount is liquidated and there is no legitimate dispute that the money is owed." Estate of Van Ryan v. McMurtray, 505 So.2d 1015, 1019 (Miss. 1987). For prejudgment interest to be awarded, the party must make a proper demand for the interest in the pleadings, including the date that it was allegedly due. Simpson v. State Farm Fire and Casualty Co., 564 So.2d 1374, 1381 (Miss. 1990).
The judge denied prejudgment interest on the award of $4,173.40 because he felt that there was a dispute between the parties that needed to be decided in court. The appellants contend that there was no dispute about the money. However, Switzer's testimony indicated that he blamed the Executrix for the late filing of the fiduciary return. Because there was a dispute between the parties as to whose fault it was that the return was filed late, the court did not abuse its discretion in refusing prejudgment interest.

VII. DID THE TRIAL COURT ERR IN GRANTING DEFENSE MOTION TO ALLOW PLAINTIFFS OTHER THAN EXECUTRIX TO REMAIN IN THE SUIT AS NOMINAL PARTIES ONLY, AND IN DENYING PLAINTIFF MR. WIRTZ THE RIGHT TO SIT AT COUNSEL TABLE DURING THE TRIAL?
Rule 17(a) of the Mississippi Rules of Civil Procedure provides that "[a]n executor ... may sue in his representative capacity without joining with him the party for whose benefit the action is brought." "The function of Rule 17 is to protect litigants from harassment and multiple suits by persons who would not be bound by the principles of res judicata and to enable the defendant to present his defenses against the proper persons and to proceed to finality of judgment." Turner v. Haynes, 489 So.2d 494, 496 (Miss. 1986) [citing Wright and Miller, Federal Practice and Procedure § 1541, pages 635, 636 (1971)]. Miss. Code Ann. § 91-7-231 (1972) allows an executor to "maintain any action or suit which shall accrue to him in the due course of administration, on any contract which he is authorized to make as such, or for the recovery of personal property, or for injuries thereto."
The court ruled that Charlena Wirtz, as Executrix, was the person who had standing *786 to collect for any wrong against the Estate. By naming the residuary beneficiaries as plaintiffs, she was protecting herself against any possible future lawsuits. By virtue of Rule 17 and § 91-7-231, the court ruled correctly.
The appellants further contend that the court erred in ruling that only Charlena could sit at the counsel table during the trial. In Nelson v. Clanton, 263 So.2d 787 (Miss. 1972), the court allowed the defendant's invalid husband to sit at the counsel table during the trial. The plaintiff contended that this was error because the presence of the invalid husband was prejudicial and resulted in a verdict for the defendant. We said,
Ordinarily, it is within the sound discretion of the trial court to determine whether a person may be present or excluded during the trial of a case. The same is true relative to allowing a member of the immediate family of a litigant to sit at the counsel table.
Nelson, 263 So.2d at 789.
The court allowed only the Executrix to sit at the table during the trial. The judge's reason was that "I just don't want the counsel tables cluttered up." Although Charlena's husband, Lynn, aided in her responsibilities as Executrix, we cannot say that the court abused its discretion in allowing only Charlena to sit at the table.

VIII.
The testimony and evidence offered by the plaintiffs were sufficient to withstand a motion for a directed verdict on the issue of whether Dennis Switzer's omission of the 1982 windfall profit taxes resulted in damages to the plaintiffs. The court erred in directing a verdict on that issue. Furthermore, the court should not have disallowed testimony on attorney's fees which were allegedly incurred as a result of the omission. In this case, those fees might properly be considered an element of damages.
We reverse and remand for a new trial as to the alleged negligence in the preparation of the schedule. Although the questions and comments interjected by the judge during the trial were harmless since the case was not submitted to the jury, we caution the judge on remand to refrain from interjecting himself into the trial to the extent that was done in the first trial. We affirm as to all other issues.
AFFIRMED IN PART; REVERSED AND REMANDED FOR A NEW TRIAL ON THE ISSUE OF THE ALLEGED NEGLIGENCE IN THE PREPARATION OF THE SCHEDULE.
ROY NOBLE LEE, C.J., HAWKINS, P.J., PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs in results only.