# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CA-00040-SCT

*CHARLENA WIRTZ, AS EXECUTRIX OF THE
ESTATE OF LENA WATSON WHITLEY, CHARLENA
WIRTZ, LYNN WIRTZ, ELIZABETH WIRTZ,
ANDREW WIRTZ AND CLAY WIRTZ*

*v.*

*DENNIS R. SWITZER AND DENNIS R. SWITZER,
CPA, LTD.*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED,
PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/93 |
| TRIAL JUDGE: | HON. RICHARD T. WATSON |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | LYNN WIRTZ, PRO SE |
| ATTORNEY FOR APPELLEES: | RICHARD D. GAMBLIN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/6/97 |
| MOTION FOR REHEARING FILED: | 11/20/97 |
| MANDATE ISSUED: | 12/31/97 |

**BEFORE PRATHER, PJ., ROBERTS AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

On June 18, 1985, Charlena Wirtz, as Executrix of the Estate of Lena Watson Whitley, and Charlena
Wirtz, Lynn Wirtz, Elizabeth Wirtz, Andrew Wirtz, and Clay Wirtz, as residuary beneficiaries under
the will of Lena Whitley, filed a Complaint in the Circuit Court of Adams County against Dennis
Switzer and Dennis Switzer, CPA, Ltd. Wirtz alleged that Switzer failed to exercise the degree of
care, skill, and diligence required of certified public accountants while providing accounting services
for the Estate.

The trial was conducted on November 4 and 5, 1987. At the close of Wirtz's case, Switzer moved for
a directed verdict on certain issues, including punitive damages, and the motion was granted by the
trial court. The trial court also granted Wirtz's Motion for Directed Verdict regarding the other

claims of the suit. On February 18, 1988, Wirtz appealed the trial court's decision to grant Switzer's Motion for Directed Verdict. In 1991, this Court affirmed the trial court's decision as to the punitive damages but remanded the case for a new trial on the issue of alleged negligent preparation of an Estate schedule by Switzer. *See Wirtz v. Switzer*, 586 So.2d 775 (Miss. 1991).

On July 13, 1992, Wirtz filed a Motion for Partial Summary Judgment. The trial court never ruled on this motion as it was not set for hearing. Wirtz engaged and dismissed several attorneys following the Mandate from the Supreme Court which resulted in three continuances of the case. On March 15, 1993, Switzer filed a Motion to Dismiss. The next day, Wirtz retained the services of Guy N. Rogers, Jr. and Christopher G. Holt. On March 25, 1993, Wirtz responded to the Motion to Dismiss. On March 29, 1993, the trial court conducted a hearing in which the Motion was denied and the case was set for trial on May 13, 1993. At this hearing the trial judge warned Wirtz that the case would be dismissed if it was not tried on May 13, 1993 "for any reason attributable to the Plaintiffs."

After the hearing, Wirtz filed several motions, including two motions to amend the Complaint. The trial court denied all motions on May 6, 1993. After being informed of a new expert witness for the Plaintiffs, Switzer filed a Motion to Exclude Testimony on May 12, 1993.

Both parties and their respective attorneys appeared before the Circuit Court of Adams County on the scheduled trial date of May 13, 1993. The trial judge, Richard T. Watson, and the attorneys for both parties participated in a settlement conference before the trial was scheduled to begin. Despite vehement protests, the trial judge did not allow Lynn and Charlena Wirtz to participate in the settlement conference. Switzer was also excluded from the conference, but made no objection. Following a brief discussion among the attorneys with confirmation from the respective clients, an agreement was reached in the amount of $18,000 for all claims arising from the alleged negligence of Switzer, and the trial judge dismissed the jury panel. The terms of the agreement were not put in writing at that time, and no contemporaneous record of the settlement was made.

Following the oral agreement, Switzer submitted a written settlement agreement and release to which Wirtz violently objected. The major problem with the wording revolved around the desire of Wirtz to seek disciplinary action against Switzer with the Mississippi and Louisiana State Boards of Accountancy. After months of unsuccessful negotiations, Switzer filed a Motion to Enforce the Settlement Agreement on August 19, 1993. After Wirtz responded on August 27, 1993, a hearing was conducted on August 30, 1993. Once again, Lynn Wirtz's request to testify was denied. After hearing oral arguments, the trial court took the motion under advisement.

On December 7, 1993, the trial court issued an opinion and order on the motion to enforce the settlement agreement. The trial court dismissed the action with prejudice, directed the Defendant to pay $18,000 into the registry of the Circuit Court of Adams County, and directed that the Plaintiffs may not institute, prosecute, or pursue any complaint or other proceeding against Switzer with the Mississippi State Board of Public Accountancy or with the Louisiana State Board of Public Accountancy. Wirtz promptly appealed.

Wirtz filed a Designation of the Record and a Statement of the Issues. In response, Switzer filed a Motion for Sanctions pursuant to Rule 10 of the Supreme Court Rules. The trial court conducted a hearing on February 14, 1994. Wirtz responded in writing but did not appear. The trial court failed to grant the requested sanctions, but many of the documents designated for the record by Wirtz were

stricken, including the Statement of the Issues.

In March of 1994, Wirtz filed a Statement of the Evidence. Switzer objected to this statement, and the trial court conducted a hearing in April of 1994. Wirtz did not appear at the hearing but responded in writing. In addition to Switzer and his attorney, the trial judge asked Christopher Holt to appear at the hearing. At this time, Holt was no longer counsel for Wirtz who was now proceeding *pro se*. After hearing Switzer's objections to the Statement of the Evidence and questioning Holt about the accuracy of the Statement, the trial court entered an order on July 21, 1994, which significantly varied from the Statement presented by Wirtz.

## STATEMENT OF THE ISSUES

### I. DID THE TRIAL COURT ERR BY ENFORCING THE ORAL SETTLEMENT AGREEMENT AND PREVENTING THE PLAINTIFFS FROM SEEKING DISCIPLINARY ACTIONS AGAINST SWITZER WITH THE MISSISSIPPI AND LOUISIANA STATE BOARDS OF PUBLIC ACCOUNTANCY?

### II. DID THE ACTIONS AND RULINGS OF THE CIRCUIT COURT JUDGE CONSTITUTE BIAS OR PREJUDICE AGAINST WIRTZ?

### III. DID THE CIRCUIT COURT PROPERLY CONSIDER AND RULE ON SWITZER'S OBJECTIONS TO WIRTZ'S STATEMENT OF THE EVIDENCE?

## STATEMENT OF THE FACTS

Lena Watson Whitley died on November 28, 1981. In her Last Will and Testament, Whitley named Charlena Wirtz as Executrix. The Will also named Lynn Wirtz, Charlena Wirtz and their three children as residuary beneficiaries of the Estate. Forrest A. Johnson represented the Estate, and Dennis Switzer served as the Estate's accountant until April 1984. The administration of the Will was supervised by Chancellor Joseph Zuccaro in the Chancery Court of Adams County.

During the course of the administration of the Estate, a dispute arose between the Executrix (Mrs. Wirtz) and certain nieces and nephews of Whitley (hereinafter "heirs") who were represented by David C. Bramlette, III. This dispute concerned ownership of certain oil and gas-producing properties located in the State of Louisiana and entitlement to distribution of income derived from those properties. As a result of the dispute, the Executrix and the heirs entered into an Act of Compromise, Settlement, Conveyance, and Release. At the request of the Estate's attorney, Switzer prepared a schedule entitled "Net Oil Income Attributable to Beneficiaries, October 31, 1983" which was incorporated into the Act.

A few days later, the Estate's attorney told the Executrix that she needed to retain an additional $30,000 from the money to be distributed to the heirs because Switzer had called and said that the 1982 windfall profit taxes had not been included on the schedule. Switzer estimated the amount of the taxes would be $30,000. The Executrix withheld $30,000 from the amount of the settlement agreement when she distributed the funds to the heirs and included a note to the heirs' attorney explaining the reason for withholding the amount. The heirs demanded a disbursement of the remaining funds, and when the Executrix refused, they filed a Complaint in the Chancery Court of

Adams County demanding payment of the amount withheld. Following continued negotiation, an agreement was reached by all parties involved.

On June 18, 1985, the Estate filed suit against Dennis Switzer asserting claims of professional malpractice, including negligent preparation of the schedule of "Net Oil Income Attributable to Beneficiaries, October 31, 1983." The case was tried on November 4 and 5, 1987. The Circuit Court directed a verdict for Switzer as to all claims arising from the preparation of the schedule of "Net Oil Income," and the Plaintiffs appealed to the Supreme Court. On September 4, 1991, this Court reversed and remanded for a new trial on the issue of Switzer's alleged negligence in the preparation of the schedule and affirmed as to all other issues. *See Wirtz v. Switzer*, 586 So.2d 775 (Miss. 1991). The Mandate was issued on November 5, 1991.

On July 13, 1992, Wirtz filed a Motion for Partial Summary Judgment. This motion was never addressed by the trial court because a hearing date was never set by the attorney representing Wirtz. After three continuances due to Wirtz's lack of trial counsel, Switzer filed a Motion to Dismiss on March 15, 1993. Following the initial trial in Chancery Court, Wirtz employed and subsequently discharged at least four different attorneys. After Switzer filed the Motion to Dismiss, Christopher Holt and Guy Rogers, Jr. appeared as counsel for Wirtz and responded to the motion. On March 29, 1993, the Circuit Court of Adams County conducted a hearing on the Motion to Dismiss and denied the motion. The trial judge was quite agitated with the state of the case especially the continued delay of trial due to Wirtz's lack of counsel. The case was set for trial on May 13, 1993, and the Court informed Wirtz that the case would be dismissed if it were not tried on May 13, 1993 for any reason attributable to the Plaintiffs.

Prior to the May 13, 1993 trial date, Wirtz filed two motions to amend the Complaint. These motions were heard by the Circuit Court and denied on May 6, 1993. On May 11, two days prior to trial, Switzer's attorney was advised by Wirtz's attorneys that a new expert witness, Cathy Reed, was expected to testify at trial on behalf of Wirtz. Switzer moved to exclude this witness's testimony. This motion was never addressed by the trial court because a settlement was reached prior to trial.

On May 13, 1993, the parties and their attorneys appeared before the Circuit Court of Adams County for trial. Prior to the commencement of the trial, Circuit Judge Richard T. Watson and the attorneys participated in a settlement conference. Lynn Wirtz and Charlena Wirtz asked the court for permission to participate in the settlement conference, but the trial judge denied the request.

After a brief discussion between the attorneys and approval by the respective clients, a settlement agreement was reached in the amount of $18,000 in settlement of all remaining claims. Judge Watson then dismissed the assembled jury panel. The terms of the settlement agreement were not put in writing at that time, and a record was not made.

Subsequently, Switzer's attorney prepared a proposed release and forwarded it to Wirtz's attorneys. Wirtz disagreed with the wording of the release, primarily because the language could be construed to preclude a complaint against Switzer before the Mississippi State Board of Public Accountancy and the Louisiana State Board of Public Accountancy. Efforts to resolve the differences in wording of the release were unsuccessful, and, on August 19, 1993, Switzer filed a Motion to Enforce the Settlement Agreement. Wirtz responded to the motion on August 27, 1993. Wirtz admitted that a settlement agreement was reached in the amount of $18,000 but denied the relinquishment of any

rights to seek disciplinary action against Switzer from the Mississippi and Louisiana State Boards of Public Accountancy.

A hearing on the motion was conducted on August 30, 1993. Following a statement by Switzer's attorney, the trial judge questioned Christopher Holt regarding the problems with the settlement agreement. Holt told the court that the problem arose from a sense of duty on the part of the Wirtz family to file disciplinary actions with the Mississippi and Louisiana Boards of Accountancy to protect the public from further negligence by Switzer. Holt also admitted that this was the first time the court was made aware of this situation. However, this desire was stated earlier in the Plaintiffs' Motion for Partial Summary Judgment which was never set for hearing. Lynn Wirtz requested permission to testify at the hearing, but the trial judge denied the request, and no proffer of the testimony was made. Following the hearing, the trial judge took the motion under advisement.

On December 7, 1993, the Circuit Court rendered an Opinion and Order on Motion of Defendants to Enforce Settlement Agreement. In this Order, the trial judge upheld the existence of an agreement, directed the Defendants to pay $18,000 into the registry of the Circuit Court of Adams County and precluded the Plaintiffs from seeking any type of disciplinary action against Switzer.

On January 6, 1994, Wirtz filed an appeal to this Opinion and Order. Shortly thereafter, Wirtz filed a Designation of the Record and Statement of the Issues. In response, Switzer filed a Motion for Sanctions asserting that the designation was not in compliance with Rule 10 of the Supreme Court Rules. A hearing was held on February 14, 1994. Wirtz responded in writing but did not attend. On June 20, 1994, the trial judge entered an Order on the Motion for Sanctions. The trial judge did not impose any sanctions on Wirtz, but the Statement of the Issues was stricken from the record in accordance with Supreme Court Rule 10(b)(4).

On March 7, 1994, Wirtz filed a Statement of the Evidence. Switzer filed objections to the statement, pursuant to Rule 10(c) of the Supreme Court Rules. The trial judge conducted a hearing on the objections on April 18, 1994. Wirtz responded in writing but did not appear at the hearing. After hearing objections to the Statement of the Evidence by Switzer's attorney, Judge Watson questioned Christopher Holt as to the accuracy of Switzer's objections. At this time, Holt was no longer representing Wirtz and was asked by the trial judge to attend the hearing. Holt testified that he made himself available to Wirtz prior to the hearing, but Wirtz did not wish to include his testimony. Wirtz disputes this statement claiming that Holt refused to attend the hearing without the issuance of a subpoena. Holt agreed with the facts as presented by Switzer rather than those presented by Wirtz. The trial judge also offered his own recollections into the record at this hearing. Subsequently, the rulings of the trial judge were incorporated into the Order on Objections to Statement of the Evidence, which was entered on July 21, 1994.

## ANALYSIS

Wirtz contends that the settlement agreement is not enforceable due to judicial interference by the trial judge, duress placed upon the Plaintiffs to accept the unfair agreement, the Plaintiffs being barred from the settlement conference, threats of sanctions and dismissal of the suit, and a conspiracy between the defense, the trial court and Wirtz's former counsel. However, the record is clear that Wirtz accepted the settlement offer of $18,000 and then rejected the agreement at a later date after being informed that the settlement could preclude any disciplinary action against Switzer with the

Accounting Boards. Therefore, the only issues before the Court involve questions of bias surrounding the trial judge's rulings, proper enforcement of the settlement agreement and the trial court's ruling on the Statement of the Evidence.

### I. DID THE TRIAL COURT ERR BY ENFORCING THE ORAL SETTLEMENT AGREEMENT AND PREVENTING THE PLAINTIFFS FROM SEEKING DISCIPLINARY ACTIONS AGAINST SWITZER WITH THE MISSISSIPPI AND LOUISIANA STATE BOARDS OF PUBLIC ACCOUNTANCY?

On May 13, 1993, the trial judge and the attorneys for both parties conducted a settlement conference prior to the scheduled trial. Neither party was allowed to participate in the conference. The attorneys agreed on a settlement in the amount of $18,000. After the attorneys conferred with their clients an oral agreement was reached, and the jury panel was dismissed. Subsequently, the parties were unable to agree on the wording of the settlement agreement, and a dispute arose. Wirtz now claims that no agreement exists.

### A. STANDARD OF REVIEW

The standard of review for examining the findings of fact of a trial judge is well settled. The findings of fact of a trial court judge will not be disturbed by this Court unless there is reasonable certainty that the findings were manifestly wrong and against the overwhelming weight of the evidence. *Richardson v. Riley*, 355 So.2d 667, 668 (Miss. 1978); *See also*, *Travis v. Hartford Accident and Indemnity Co.*, 630 So.2d 337 (Miss. 1993); *Collins by Smith v. McMurry*, 539 So.2d 127 (Miss. 1989).

### B. DID THE PARTIES REACH AN AGREEMENT

Wirtz makes several arguments on this point. However, the record, in Wirtz's Response to Motion to Enforce Settlement, is clear that the parties reached an agreement to settle on May 13, 1993. Despite the appearance of a settlement, Wirtz's arguments will be briefly discussed.

### 1. Duress

Wirtz claims that the settlement agreement is not valid due to duress placed on the Plaintiffs by the trial court. Wirtz contends that the trial court was so unfair in its rulings and posture towards the Plaintiffs as to force them to accept an agreement that was patently unfair and unacceptable to the average person. Wirtz also claims that during the settlement conference the trial judge clearly indicated to their attorneys that a directed verdict was inevitable unless the case was settled.

However, none of these allegations are supported by the voluminous record. While it is clear that the trial judge was quite agitated with Wirtz from the start due to constant delays in setting the case for trial, there are no examples of threats to dismiss the case. In fact, Wirtz's claims are directly contradicted by the statements of Christopher Holt and Judge Watson at the hearing on the Statement of the Evidence. These statements give rise to Wirtz's claim of a conspiracy but are the only recorded statements available to the Court.

Switzer contends that Wirtz's claims of duress are misplaced and reflect a fundamental misunderstanding of the concept. This Court agrees. As suggested by Switzer, Wirtz had some

serious expert witness problems shortly before trial. An expert is required to prove malpractice on the part of an accountant, and Wirtz had one expert who was most likely unavailable (literally but not legally) and another who was noticed to the defense only two days prior to trial. The trial judge initially excluded the testimony of the most recent expert but later changed his mind, allowing Switzer to choose between the two experts. This choice was never made due to the settlement.

There appears to be no merit in Wirtz's claim of duress. It is possible that the Plaintiffs were intimidated by the gruff and intolerant nature of the trial judge, but there is no evidence of duress or threats created by the trial judge.

## 2. Lack of Contemporaneous Writing

Wirtz argues that the lack of a writing to support the claims of a settlement agreement makes the agreement void because of the potential for fraud, mistake, and disputes. However, this Court has consistently recognized the validity of oral settlement agreements. ***See Travis v. Hartford Accident and Indemnity Co.***, 630 So.2d 337 (Miss. 1993); ***Collins v. Dixie Transport, Inc.***, 543 So.2d 160 (Miss. 1989).

## 3. Attorneys had no Authorization to Settle

Wirtz claims that their attorneys did not have the authority to enter this agreement. As stated by Switzer:

> [I]t is presumed that an attorney who has represented a party is authorized to take all action necessary to conduct the litigation. The burden of showing that the attorney had no authority to act is upon the party denying such authority. ***See Terrain Enterprises, Inc. v. Western Cas. and Surety Co.***, 774 F.2d 1320, 1322 (5th Cir. 1985), *citing* ***Great Atlantic & Pacific Tea Co. v. Majure***, 176 Miss. 356, 168 So. 468, 472 (1936) *and* ***Hirsch Bros. & Co. v. R. E. Kennington Co.***, 155 Miss. 242, 124 So. 344, 347-48 (1929).

The record indicates that the attorneys for Wirtz did have the authority to make the agreement. Wirtz failed to prove that they did not.

Despite all of the contentions presented by Wirtz, it is undeniable that Wirtz admitted to the existence of a settlement agreement in the amount of $18,000. Therefore, the trial court acted properly in treating the settlement agreement as valid.

## C. DOES THE AGREEMENT BAR THE INSTITUTION OF DISCIPLINARY ACTION AGAINST SWITZER WITH THE MISSISSIPPI AND LOUISIANA STATE BOARDS OF ACCOUNTANCY

Wirtz argues that, even if an agreement exists, no agreement was made regarding the desire of the Plaintiffs to seek disciplinary action against Switzer with the Mississippi and Louisiana State Boards of Accountancy. Therefore, preventing the Plaintiffs from instituting such action would constitute the addition of a material term to the agreement to which they do not agree. Furthermore, it is in the best interest of the public at large to discipline negligent accountants to prevent further losses by innocent parties.

Switzer argues that Wirtz's attorneys did not reserve or except any terms or conditions from the settlement agreement and that the agreement was made in full accord and satisfaction of all claims arising from the allegedly negligent accounting services. The trial court agreed. In addition, Switzer cites applicable law supporting the enforcement of settlement agreements:

> The settled law in Mississippi is that "[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." **D. H. Overmyer Co. v. Loflin**, 440 F.2d 1213, 1215 (5[th]Cir. 1971). Mississippi "law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the agreement which the parties have made, absent any fraud, mistake, or overreaching." **McManus v. Howard**, 569 So.2d 1213, 1215 (Miss. 1990).

Following a hearing on the Motion to Enforce Settlement, the trial court determined that this issue was not reserved by the Plaintiffs at any time, Switzer entered the settlement agreement with the anticipation of ending all litigation, and the trial court was not informed of this desire of the Plaintiffs until August 30, 1993.[1] The record supports the findings of the trial court.

Although this Court has never addressed this specific issue, Switzer offers the similar case of **Downey v. Clauder**, 811 F. Supp. 338 (S.D. Ohio 1992). In **Downey**, the Court assisted the parties in reaching a settlement agreement in a legal malpractice action. However, Downey had previously instituted disciplinary action against Clauder with the Cincinnati Bar Association, and that action was still pending at the time of the settlement. After Clauder refused to sign the agreement, Downey withdrew the complaint, but there was another pending complaint still before the Cincinnati Bar.

The district court looked to the intent of the parties and the circumstances surrounding the agreement. The court determined that Clauder settled to avoid disciplinary proceedings and gave this principle purpose the greatest weight. The court concluded that without the settlement of all remaining claims the agreement had little value to Clauder. **Id.** at 339-40. The court also noted that, if the second complaint was of importance to Downey, it should have been excepted from the agreement. **Id.** at 340.

Switzer analogizes **Downey** with the case *sub judice.* Because a settlement of the claim would have little value to Switzer if Wirtz was able to seek disciplinary action, Switzer contends that the intent of the parties was to resolve all claims. Once again, Switzer points to the fact that the term was not specifically reserved or excepted from the agreement.

In conclusion, it appears that the trial court acted properly in enforcing the agreement as to all claims. Since the right to seek disciplinary action was never excepted from the agreement, the agreement should prevent such future action by the Plaintiffs. It seems clear that the decision of the trial court was not manifest error. Therefore, his decision should stand.

## D. EVIDENTIARY HEARING

Wirtz also argues that the trial court erred by not conducting an evidentiary hearing on the settlement agreement dispute. However, the trial court did conduct a hearing on the dispute. Wirtz contends that this hearing was insufficient as Lynn and Charlena Wirtz were not allowed to testify. This fact is undisputed, but no proffer of their testimony was made to the trial court.

If a proffer had been made, it is conceivable that the trial judge should have recused himself from an evidentiary hearing on the matter considering the nature of the charges by Wirtz of judicial interference and misconduct and the fact that the judge was a witness and a participant in the alleged improprieties. Although not cited by Wirtz, this Court has held that a judge must recuse himself in a similar situation. In *Collins v. Dixie Transport, Inc.*, 543 So.2d 160 (Miss. 1989), the trial court held an evidentiary hearing to determine if an oral settlement agreement was actually made. Throughout the hearing, witnesses for the Plaintiff testified that the trial judge was a witness to the agreement and that the judge had urged them to accept the settlement offer. Following each remark, the trial judge commented on his actions to the Plaintiff's detriment. This Court remanded the case for a new evidentiary hearing finding that the judge assumed the role of both witness and finder of fact. *Collins*, 543 So.2d at 167.

Since Wirtz made no proffer of testimony, the finding in *Collins* is not readily applicable to the present case at the hearing on the Motion to Enforce Settlement Agreement. However, at the hearing on the Statement of the Evidence, the trial judge consistently offered his own testimony into the record concerning the objections of Wirtz. Wirtz was not at the hearing to object to the statements of the trial judge and was not represented by counsel. Since the statements were not directly addressed by Wirtz, no testimony was proffered, and no recusal was sought at the time of the hearing, this issue is also without merit.

In summary, Wirtz makes many arguments as to the existence of a settlement agreement. None have merit. It is clearly indicated in the record that an agreement did exist as of May 13, 1993. No argument presented by Wirtz is persuasive enough to overcome the manifest error standard afforded to the trial judge. It is also clear that an agreement allowing Wirtz to seek disciplinary action would have little value to Switzer. The fact that the key terms were not excepted from the agreement supports the trial judge's finding of a full and binding agreement. Therefore, the decision of the trial court is affirmed as to this issue.

### II. DID THE ACTIONS AND RULINGS OF THE CIRCUIT COURT JUDGE CONSTITUTE BIAS OR PREJUDICE AGAINST WIRTZ?

Wirtz alleges that the trial judge acted improperly, prejudicially, and with bias by consistently making rulings favorable to Switzer while ignoring Wirtz's arguments. However, this claim is totally unsupported by the record. The crux of Wirtz's argument involves alleged threats of sanctions, threats of a dismissal or directed verdict, and improper affiliation of the trial judge with the defense counsel and a defense witness.

Taken in context, the threat of dismissal by the trial judge was understandable and proper. At the hearing on Switzer's Motion to Dismiss, the trial judge admonished Wirtz for constantly delaying the trial of this case. Prior to the hearing, Wirtz had asked for, and received, three continuances due to the lack of trial counsel. At the hearing, the trial judge was understandably upset that this case was still on the docket considering the heavy case load of the Circuit Court of Adams County. He informed Wirtz that the case would be dismissed if a trial was not conducted on May 13, 1993 for any reason attributable to the Plaintiff. Wirtz took this statement as a threat, possibly indicating the trial judge's bias against them. However, this interpretation is not supported by the record as there is no evidence of intent to intimidate on the part of the trial judge. The statement was clearly made to

expedite the matter at hand.

Wirtz also argues that the trial judge threatened to grant a Motion for Directed Verdict in favor of Switzer during the settlement negotiations on May 13, 1993. However, neither Lynn nor Charlena Wirtz participated in the negotiations. This claim is based on alleged statements attributable to their attorney, Christopher Holt. However, this claim is directly contradicted by the statements of Holt, the trial judge and Switzer's attorney at the hearing on the Statement of the Evidence. Throughout the voluminous record in this case, there is no evidence of this claim other than the statements of the Plaintiffs.

At the hearing on the Motion to Enforce Settlement Agreement, the trial judge threatened to sanction Wirtz following her refusal to accept the settlement agreement. The trial judge was obviously angry over the breakdown in settlement negotiations. He assessed Wirtz the costs of impaneling the jury on May 13, 1993, finding her opposition to the settlement agreement to be without merit and frivolous but no sanctions were imposed. Subsequently, Switzer sought sanctions against the Wirtz for filing inappropriate documents in the Designation of the Record and for the incendiary nature of Wirtz's Statement of the Issues. However, the trial judge imposed no sanctions at this time, giving Wirtz the benefit of the doubt since she was now acting *pro se*.

At no time did the trial court impose sanctions on Wirtz. Despite the contentions of Wirtz, no duress to accept the agreement could arise from the consideration of sanctions because all occurred following the settlement agreement. The trial judge acted properly at all times and only imposed the fee for the jury cost after finding Wirtz's objection to the settlement to be frivolous.

Wirtz also argues that the trial judge erred by striking designated documents from the Designation of the Record. The judge did allow Wirtz to designate the entire record but found many documents to be duplicative and in violation of Rule 10 of the Supreme Court Rules. No improper behavior can be found as to this assertion. It appears that the trial judge strictly followed the requirements of Rule 10.

Finally, Wirtz contends that the trial judge showed bias and intimidated the Plaintiffs by speaking of his long-term friendship with a partner in the defense counsel's firm and with a defense witness. At the hearing on the Motion to Dismiss, the defense expressed concern over deposing a witness, Federal Judge David Bramlette, who had represented the heirs in their suit against Wirtz. The trial judge stated that Bramlette was a lifelong acquaintance, and there should be no problem in taking his deposition. At the hearing, the trial judge also inquired about the health of William O. Carter, Jr., a senior partner of the defense counsel's firm of Wise Carter Child & Caraway, P. A. The trial judge and Carter attended law school together but have had no business dealings since. The trial judge stated as much at the hearing on the Statement of the Evidence. Wirtz makes no showing of improper behavior on the part of the trial judge. The fact that the judge knows prominent members of the legal community has little bearing on his ability to fairly administrate a case.

This issue is without merit. The record does not support a finding that the trial judge acted improperly or prejudicially. Although the judge was firm and, at times, gruff, this Court has held that "an occasional display of irritation, usually regretted as soon as made, does not suffice to show personal bias or prejudice, whether the irritation was justified or not." *Middleton v. Evers*, 515 So.2d 940, 942 (Miss. 1987). A judge must recuse himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Collins v. Joshi*, 611 So.2d 898, 901

(Miss. 1992); *Rutland v. Pridgen*, 493 So.2d 952, 954 (Miss. 1986); Mississippi Code of Judicial Conduct, Canon 3C(1). Wirtz does not meet this standard. Therefore, it is recommended that this issue be affirmed.

### III. DID THE CIRCUIT COURT PROPERLY CONSIDER AND RULE ON SWITZER'S OBJECTIONS TO WIRTZ'S STATEMENT OF THE EVIDENCE?

The Statement of the Evidence should convey a fair, accurate, and complete account of what transpired with respect to those issues that are the basis for appeal. Rule 10(c) of the Supreme Court Rules. If a disagreement exists between parties as to the content of the statement, the trial court shall settle the differences, and the record shall be made to conform to the truth. Rule 10(e) of the Supreme Court Rules.

Wirtz argues that the hearing on the Statement of the Evidence was a "sham," and the present Statement of the Evidence does not conform to the truth. Wirtz was not present at the hearing which was held on April 18, 1994.

The Circuit Judge directed Christopher Holt, Wirtz's former attorney, to appear at the hearing. After Switzer's counsel made objections to the Statement of the Evidence as presented by Wirtz, the trial court asked Holt if Switzer's rendition of the events was correct. Holt answered in the affirmative. Wirtz uses terms such as "betrayal" and "conspiracy" to describe the preceding event, but there is no hint of impropriety in the record. Wirtz was given the opportunity to attend the hearing but chose not to.

The trial judge, the defense and Christopher Holt agree that the Statement of the Evidence conforms to the truth in compliance with Rule 10. Wirtz claims that it does not. The record provides no basis for doubting the statements of the former. Clearly, there is no proof of manifest error on the part of the trial judge. Therefore, the decision of the trial judge is affirmed as to this issue.

### CONCLUSION

After reviewing the voluminous record in this case, very few facts are uncontested. It is clear that Wirtz felt prejudiced by the trial proceedings. It is not clear that these feelings were justified. From the record, it is obvious that Wirtz believes that they were wronged and should be compensated. They also believe that Switzer should be responsible for his actions. It is their perception of this accountability that has hindered the settlement process.

Despite good intentions and zeal, Wirtz has displayed little or no understanding of the legal system. Their arguments do not meet the necessary standards for reversal, and the issues presented have little merit. Although it may be in the public's best interest to allow Wirtz to seek disciplinary action against Switzer, it was not part of the settlement agreement. Therefore, Wirtz should be precluded from seeking such action.

**AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND SMITH, JJ., CONCUR. LEE, C.J., AND McRAE, J., CONCUR IN RESULT ONLY.**

1. The record indicates that Wirtz did express a desire to seek disciplinary action prior to August 30. The statement was made in the Motion for Partial Summary Judgment. However, this motion was never addressed by the trial court because it was never set for hearing.

Ironically, this works in Switzer's favor. Since Wirtz previously expressed a desire to seek disciplinary action, the fact that this issue was not reserved or excepted from the settlement agreement supports the proposition that the settlement was made in full accord and satisfaction of all claims arising from the alleged negligence.